R. F. GEORGE ET AL. V. FRANK DEAN, COLLECTOR, &c.

1. INJUNCTION RESTRAINING COLLECTION OF TAXES—PARTIES.—
Where the rights of a large number of persons are involved, or a
multitude of suits may be avoided and great individual loss and
damage prevented, a court of equity may interfere to prevent the
collection of a tax, if its validity may be considered and determined
by the court just as consistently with public policy before as after
its collection.

2. IRREGULARITIES BY TAX ASSESSOR AND COLLECTORS.—A misde-
scription of the property of a tax-payer by the assessor, or a mere
irregularity in his entry of it upon the assessment list or roll, fur-
nishes no sufficient ground for enjoining the collection of a tax, for
which the plaintiff was justly liable, and with which his property
had been legally assessed by the proper officer charged with this
duty.

3. ESSENTIALS OF A VALID TAX are: (1,) a levy by competent legis-
lative authority; and (2,) a valid assessment of the property upon
which such tax is levied by the officer or tribunal to whom this duty
is committed by law.

4. INJUNCTION RESTRAINING COLLECTION OF TAXES.—Although a tax
collector would be a trespasser, and subject to damages, if he should
seize and sell property for the collection of a valid tax, without a
sufficient warrant for its collection, the invalidity of the assessment
roll or process affords no sufficient ground for the interference of a
court of equity, unless the party asking its aid is ready to do equity,
by paying the amount of tax legally due from him.

5. SAME.—The property of the tax-payers of the county of Galves-
ton had not been assessed upon the assessment rolls of the county for
the year 1874, by precincts, as taxing districts, nor by school dis-
tricts, nor were the names of the tax-payers arranged in alphabetical
order on the precinct rolls, nor did the consolidated tax-roll, made
by the justices after the completion of the assessment, show the
precincts in which the property was situated: *Held*, To be mere
irregularities, not affecting the liability to the tax legally levied.

6. ASSESSMENT.—The amount of tax is ascertained by an assessment of
the property of the tax-payer by the officer or tribunal, and in the
manner prescribed by law. Until this is done, the tax-payer cannot
be called on for the payment of the tax.

7. SAME.—In the assessment, the officer or tribunal is required to ascer-
tain and make an inventory or list of the property upon which the
tax has been levied, and to determine its value; this being done,
the amount of tax to each tax-payer is only a matter of calculation.

8. TAX ROLL.—The imperfect collection into the tax-roll of the facts ascertained by the assessment would not affect the liability to the tax.

9. SAME.—As the tax-roll is the warrant by which the collector is authorized to demand taxes, and to seize and sell property in default of their payment, it should exhibit not only the list and valuation of the property of each individual tax-payer, as shown by the assessment, but it should show in its appropriate column the amount of each specific tax for which he is liable.

10. SAME.—The omission to set out in the tax-roll the amount of each tax levied would, at most, be an irregularity affecting the power of the collector to seize and sell property—in nowise, however, affecting the liability of the tax-payer.

11. SAME.—Hence the failure to exhibit the amount of a school tax legally levied, upon the tax-roll, is no cause for injunction restraining its collection.

12. COUNTY TAX—INTEREST ON FUNDED DEBT.—The validity of a tax to meet the interest and provide a sinking fund for the payment of the bonds issued by Galveston county, by authority of the act of the Legislature, November 29, 1871, depends upon the authority of the county to make the levy, not upon the fact that it is conferred in the act authorizing the issuance of the bonds, rather than by some other statute.

13. STATUTE CONSTRUED.—The act of November 29, 1871, authorizing Galveston county to issue certain bonds, and requiring "that the court shall, at the time of ordering such issue, also provide for the payment of the interest on said bonds, and a sinking fund to meet the principal under the laws now in force," is a legislative construction of the existing laws, as authorizing the county to provide for the payment of the interest and principal of such bonds when issued under legislative authority.

14. SAME.—Aside from such legislative authority, the act of August 13, 1870, (Paschal's Dig., art. 6113,) organizing county courts, expressly delegates to said courts power to levy and collect taxes for county purposes, such as paying its just debts.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

Robert F. George, H. J. Larsen, and others, brought suit against Frank Dean, collector of taxes for Galveston county, to enjoin the collection of the following taxes: A tax of one fourth of one per cent., levied by the Legislature in 1873, for the scholastic year ending September 1, 1874, for the purpose of building and repairing school houses; a special tax, levied

by the County Court of Galveston county, to pay interest and sinking fund of Galveston county bonds, issued by said county under a special act of the Legislature, approved November 29, 1871. The facts upon which the case was tried are given substantially.

Plaintiff read the consolidated assessment roll of taxes, which was in possession of the defendant as collector. This roll sets forth the names of the tax-payers, in alphabetical order, the amount and value of property belonging to each, and the amount of the several taxes assessed against each tax-payer, except the school tax of one fourth of one per cent.

The property set forth and described on said roll did not appear by precincts or by school districts, but from the entire body of the county, and without reference to any boundaries of precincts or school district. The said school-tax did not appear on the roll. It was shown that the real and personal property of some of the plaintiffs was located in different precincts and districts.

The following instructions from the comptroller to assessors for 1874 were read:

"When the precinct assessments are completed, you should at once meet at the county seat of your county, and consolidate such assessments in one general roll, by precincts, so as to show the property assessed in each.

"The names of the tax-payers should be arranged in alphabetical order on the roll of each precinct. All the columns on the roll should be correctly added up, and the footings recapitulated; also the justices of the peace, when through their precinct assessments, must meet and consolidate the precinct assessments into a general roll, alphabetically arranged. To illustrate: the names of the tax-payers for the whole county, beginning with the letter A, must be placed together, consolidated. No payment will be made for any other roll returned to this office."

The tax-roll exhibited, was on the printed forms furnished

by the comptroller, with no column for the school-tax. When a tax-payer pays the school tax, the collector marks in red ink on said roll the amount so paid as the school tax.

The said special act, approved November 29, 1871, was then read, and the order of the County Court of Galveston county, ordering the issuance of bonds on account of funded debt, and imposing a tax of one tenth of one per cent., for interest and sinking fund, to meet said bonds.

It was admitted, that defendant had seized property of some of the defendants, and was about to seize property of others, to make said taxes; all other taxes for that year, 1874, of the defendants, had been paid.

The defendant proved, by R. D. Johnson, the presiding justice, that " all the property situated in the county was assessed by the justices of the peace, in their respective precincts; each justice assessing the property in his precinct, in the manner prescribed by law, and in accordance with the instructions of the comptroller. The original assessment of defendants George and Larsen were produced on printed blanks, as furnished by the comptroller. The property of the other plaintiffs was assessed in the same manner. After the assessment by precincts was completed, the justices proceeded to compile a consolidated assessment roll, as required by the instructions of the comptroller; and for this purpose employed J. M. O. Menard, who, under the direction of the justices, prepared and compiled the consolidated assessment rolls for 1874. The roll was compiled from the assessments made of each person's property by the justices, in their respective precincts. The property of each tax-payer was assessed separately by the justice in whose precinct he lived. The names of all the tax-payers were arranged in alphabetical order on the consolidated roll. At the end of the roll there was a recapitulation of the entire assessment for the year, (1874,) showing the amount of the assessment of each precinct separately, and the amount of the commissions of each justice. After they were compiled, they were inspected and approved by the

justices as the 'consolidated assessment rolls of Galveston county, for the year 1874; by order of court, October 16, 1874.'

"J. M. O. Menard, deputy sheriff and collector, presented the said tax-roll, as prepared by himself, with duplicates, and his bill. The work was received, and he was paid for it.

"In order to put the tax-payer to as little trouble as possible, the justices adopted this rule in some cases: A tax-payer owning property in different precincts, could render his property to the justice of the precinct in which he lived, stating in what precinct his property was situated; the justice would assess the property in each precinct on a separate inventory, under the oath of the tax-payer. That property not in his precinct was certified to the proper justice, who, if the assessment was satisfactory to him, would adopt it as his own; otherwise, he would assess it himself. This was done for the convenience of the tax-payers. Property belonging to the same person, but in different precincts, does not appear all on the same inventory; there was a separate inventory for each precinct."

The real estate of plaintiff George, as shown in the assessment exhibits, was in a different precinct from the personal property rendered in precinct No. 3, where rendered.

J. M. O. Menard testified: "I was employed to compile the consolidated tax-roll of Galveston county, for 1874; I compiled the roll from the inventories and assessments or valuation handed me by the justices of the peace. At the time I did so, I asked the justices for a list of all the taxes which had been levied, that I might compute the taxes on the assessed value of each person's property whose name and assessment appeared on the inventories handed me. A list was given me by the justices, and I made the computation on the consolidated rolls accordingly. The statement given me did not contain the rate per cent. for the school-tax, (viz., of one fourth of one per cent., levied for the purpose of building and repairing school-houses,) therefore I did

not compute the school-tax upon the consolidated roll, and write it down in a separate column, as I did in the case of other taxes. When I presented the consolidated roll to the justices in County Court, for inspection and approval, they discovered the omission, viz., that the school-tax had not been computed like the other taxes, and set down in a separate column upon the consolidated assessment-roll. The justices in County Court discussed the question how this omission should be corrected, and concluded, in order to save the county further expense in compiling another roll, that the school-tax should be computed on the said roll, there being space on it for that purpose. I was instructed by the justices to do this, and there being space enough on the roll, I expressed my willingness to do this. The rolls were then approved by the County Court.

"I was tax collector at that time, being deputy sheriff for the collection of taxes. When the consolidated rolls were delivered to me as collector, the said school-tax was not computed on said rolls. I was also the compiler of the rolls, and was instructed by the justices to compute said school-tax on said rolls, and to rule a column on the rolls for that purpose. I did not compute said school-tax at once; but being crowded with business, I computed said tax on the assessed value of a person's property as he came up to pay his taxes, in accordance with the rate levied, and then wrote it down in a column ruled for that purpose on the assessment-rolls, in red ink. Being both compiler and collector, I thought that the most convenient way. The largest portion of said school-tax has been collected. The fact that said tax was not calculated on said consolidated roll at once, occurred through the mistake either of the justices or of the board of school directors."

The second supplemental tax-roll for 1874 had the school-tax carried out in its proper column. The first supplemental roll was defective, as in the original roll. Proper exceptions were taken by plaintiffs to the evidence of Johnson and

Menard, and to the introduction of the other documents explanatory of the tax-roll.

Judgment was rendered for the defendant, and the plaintiffs appealed.

This case and the succeeding case were advanced under the rules of the Supreme Court, adopted at the Galveston Term, 1877.

*L. E. Trezevant,* for appellants.—Frank Dean, as collector of taxes for Galveston county, demands of appellants certain taxes for the year 1874, to wit:

1st. A tax of one fourth of one per cent., imposed by the act of April 30, 1873, for the purpose of building and repairing school-houses in the several school districts of the several counties.

2d. A special tax of one tenth, levied by the County Court of Galveston county, to pay county indebtedness, by authority of the special act set out in plaintiffs' petition. (See Special Laws, 12th Leg., 2d sess., p. 118.)

Plaintiffs refused to pay these two taxes, paying all the others.

The collector levied upon and seized the property of some of the complainants, and was proceeding to seize the property of the others, for the purpose of enforcing the payment of said taxes, when plaintiffs filed their petition, praying for the writ of injunction upon a final hearing.

The court below overruled defendant's demurrer to the plaintiffs' petition, and rendered judgment, dismissing plaintiffs' petition.

Appellants submit the following propositions:

1st. The school-tax was not assessed, and cannot therefore be collected.

2d. The County Court had no power to levy the special tax.

The question of the authority of the County Court to levy the special tax of one tenth of one per cent., is discussed at

length in our brief in case of Jos. Labadie *et al. v.* Frank Dean, (next case.)

The act levying the school tax, (Gen. Laws, 12th Leg., p. 84, sec. 23,) declares, that this tax shall be collected in the same manner as other taxes are collected in the several school districts of the several counties; may be relinquished to the tax-payers of any district, if no such tax is necessary; that this tax shall not go into the public-school fund, but shall be expended in the district in which it may be collected; no district shall be taxed for the building or repairing of school-houses situate in any other district, and this tax shall not be collected in any district where no free school is established, or proposed to be established.

SEC. 32. If the public-school fund apportionment to any particular district shall not be sufficient to employ competent teachers for the schools in that district for four months in each year, the board of directors shall levy an *ad valorem* tax upon all the taxable property in said district, as shown by the assessment rolls made out by the justices of the peace, sufficient to supply the deficiency; and, in order that this, may be done, the justices of the peace, in making their regular assessment of taxes, shall assess the property of the inhabitants of each school district separately.

SEC. 33. The taxes collected in the several school districts shall be paid into the county treasury, and the treasurer shall keep a separate account thereof for each school district.

It will thus be seen that a just and equitable plan of assessing and collecting the school-tax is well and carefully devised and prescribed by the law—a plan by which no man's property is taxed where the tax is not wanted, and by which no one district is taxed for another.

Under the act to regulate the assessment and collection of taxes of May 31, 1873, (Gen. Laws, 13th Leg., p. 124, sec. 4,) all property, both real and personal, may be rendered for taxation where the owner resides, the realty to be valued. where situate.

By the act of April 30, 1874, amendatory of the act of May, 1873, (Gen. Laws, 14th Leg., p. 173, sec. 2,) the oath of the tax-payer is changed, and the assessment and valuation of all property within the State is to be made where the owner resides.

Under the assessment made under the above-cited acts, the tax-rolls of Galveston county may and do contain property situate without the county of Galveston.

The facts in this case are, that the property assessed upon the assessment roll of taxes for Galveston county for the year 1874, is not assessed by precincts, nor by school districts, but is set forth upon said roll from the entire body of the county, without reference to any boundaries of either precincts or school districts.

The school tax does not appear on said roll at all; is not assessed either by precincts or by school districts.

The property of some of the plaintiffs is situate in different precincts and school districts of Galveston county.

The question now arises: Do we find the law operating in this case?—do we find the law carried out?

Have these complainants been found under the law to be liable to the payment of this school tax? The law has fixed the tax; has designated the taxing districts; the value of the property, within and without the county; and the names of the owners has been ascertained; but has it been ascertained that all or any part of the property of these complainants is liable to the payment of a school-tax in this school district, or in that?

It is very clear that the assessor of taxes, finding no school district in which the tax is not wanted; finding no district in which a school is not established, has not determined by assessment that the property of these complainants lies in certain school districts of Galveston county, in which a free school is established, and in which the tax is needed, and that their property situate within a certain district is liable to the payment of the tax assessed against that district.

So far from this, nothing has been ascertained, except the names of the owners of certain property and the value of certain property situate we know not where within the State; situate we know not where within the county.

Whether these complainants are liable to the payment of this tax, or of any part of it, yet remains to be ascertained. This can be done only by an assessment as prescribed by law.  As is said in Green *v*. Craft, 28 Miss., 70: "No person is a tax-payer until he has been so declared by the proper officer.  The assessment must be as certain in designating the person chargeable with the tax, as it must be in designating the amount of the charge and the property to which reference is made, for the purpose of ascertaining such amount. An assessment must be thus made in order to create a liability to pay the tax."

To authorize the collector to sell property to enforce the payment of taxes, there must be both a legal liability to pay the tax, and a legal default in making the payment. (See cases to same effect, cited in Hilliard on Taxation, 332, sec. 90.)  In other words, in order that each and every citizen shall pay an equal and uniform tax in proportion to the value of his property, a listing and valuation of all the property subject to the tax within the taxing district is indispensable.  This is a prerequisite which cannot under any circumstances be dispensed with.  Each citizen is directly interested in the list.  By it alone can the legality of the tax be tested. This is his only security against unequal taxation.  The charge or assessment of a specific sum of money upon each tract of land embraced in the list or roll, by the proper authority, is another essential condition upon which the liability of the citizen to pay the tax depends.

By this assessment the amount which every citizen is bound to pay for the public benefit is definitely fixed, and to it he is compelled to resort, for the purpose of ascertaining how much money he must pay to that public, as his share of a common burden, and thus prevent the sale of his property.  It is the

authority upon which the collector proceeds to demand and enforce the collection of the tax; he has no other means of ascertaining the sum assessed against an estate, and in this respect it may be regarded as analogous to an execution issuing upon a judgment.

Again, it is evident that the tax must be due and unpaid, in order to authorize the sale of the land upon which it was assessed. This can only be shown by proof that the land was not only listed and valued, but that the tax charged against it was, in fact, levied by competent authority, and in the time and manner prescribed by law. (Blackw. on Tax Titles, chs. V and VI.)

That the property of these complainants has not been ascertained to be chargeable with this school-tax, and that the tax is not therefore collectible, must be held to be true, and to be within the case of Clegg v. The State, 42 Tex., 605.

As to appellants' first five assignments of error, appellants beg leave to express a regret that the record should be incumbered with so much of immaterial matter.

Concede all that is attempted to be proved by appellee, and still the fact remains that there has been no assessment of the school-tax. The only legal evidence that a valid tax has been assessed is the official assessment roll. (People v. San Francisco Savings Union, 31 Cal., 132; Kelly v. Craig, 5 Ired., 129.)

*M. E. Kleberg,* for appellee.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by appellants to enjoin appellee, the collector of taxes of Galveston county, from collecting the following taxes, viz:

1. A tax of one fourth of one per cent., levied for the purpose of building and repairing school-houses, by section 23 of "An act to establish and maintain a system of public free schools," passed April 30, 1873.

2. A special tax of one tenth of one per cent., levied by

the County Court of Galveston county, to meet the interest and provide a sinking fund for the payment of the bonds issued by said county, under a special act of the 12th Legislature, approved November 29, 1871.

In the case of Blessing v. The City of Galveston, 42 Tex., 641, it is said, that when the rights of a large number of persons are involved, or a multitude of suits may be avoided and great individual loss and damage prevented, a court of equity may interpose to prevent the collection of a tax, if its validity may be considered and determined by the court, just as consistently with public policy before as after its collection; and the rule thus announced was subsequently approved and sanctioned by the action of the court in quite a number of cases involving the validity of the school-tax of one per cent. levied for the year 1871. (43 Tex., 41.) Still, it is to be noted, while it is held in the case referred to, that the collection of taxes, either municipal or State, under such circumstances as are there indicated, may be restrained by injunction, it is also said, that this power should be exercised by the court with the greatest circumspection, and only in cases where the parties are equitably entitled to be relieved from the payment of the tax demanded of them, (Blessing v. City of Galveston, 42 Tex., 641;) and in the case of Harrison v. Vines, 46 Tex., 15, it is held that a misdescription of the property by the assessor, or a mere irregularity in his entry of it upon the assessment list or roll, furnishes no sufficient ground for enjoining the collection of a tax for which the plaintiff was justly liable, and with which his property had been legally and truly assessed by the proper officer charged with this duty.

The essential requisites of a valid tax are, unquestionably, 1st, a legal levy by competent legislative authority; 2d, a valid assessment of the property upon which such tax is levied by the officer or tribunal to whom this duty is committed by law. If these two requisites concur, the citizen is justly liable for the amount of tax assessed upon his property.

Still, it may be, if he fails or refuses to pay the tax thus assessed, that the officer whose duty it is to collect the taxes, would be a wrongdoer and trespasser, and might subject himself to damages, if he should seize and sell property for this purpose without a valid and sufficient warrant for its collection, or where the assessment roll, by virtue of which he acts, does not emanate from proper authority, or is so defective upon its face as not to give color of authority for his action. But a mere defect in the process under which the collector acts, or the fact that it is absolutely void, affords no sufficient ground for the interference of a court of equity, unless the party who seeks aid is himself ready and willing to do equity. It is therefore essential for him to proffer to pay the amount of tax properly assessed upon his property before the court will interpose for his relief.

There is no pretense that the tax of which appellants first complain was not legally levied, or that any part of this tax had been relinquished to the tax-payers, by the board of school directors, in any district in which it was being collected, or that it had been levied for the purpose of building or repairing school houses in other districts than those in which the property upon which it had been assessed was situated, or that there was no public free school established, or proposed to be established, in any district in which it was being collected. (Sec. 23, Act of April 30, 1873, 13th Legislature, p. 91.) Nor is it alleged or claimed, unless in some few instances, that the property of appellants was not assessed by the justice of the peace for the precinct in which it was situated. The objections to it are, in effect, that the property of appellants, and all other tax-payers of Galveston county, had not been assessed upon the assessment rolls of said county for the year 1874, by precincts, as taxing districts, nor by school districts; and that the assessment roll of taxes does not set forth the amount or rate per cent. of said tax. It seems also to be insisted that said tax has not been legally assessed, because the name of the tax-payers had not been

arranged in alphabetical order on precinct rolls; that the consolidated tax-roll, made by the justice after the completion of the assessment, does not show the precinct in which the property assessed is situated; and that the columns upon the roll should have been correctly added up, and the footings recapitulated.

Evidently none of these objections tend to show that appellants are not, in equity and good conscience, chargeable for the full amount of taxes demanded of them. They present mere irregularities in making the tax-roll. If true, they show merely a want of proper care and diligence in the discharge of their duties by the officers of the county, which duties, however, were evidently prescribed and intended for the benefit of the public rather than that of the individual tax-payer.

The amount of tax with which a party is justly chargeable by reason of the levy of an *ad valorem* tax can be properly ascertained only by an assessment in the manner, and by the officer or tribunal to whom this duty is committed by law. Until his property has been thus assessed, the tax-payer cannot be called upon for its payment. No liability for it attaches either to him or to his property. (Clegg *v.* The State, 42 Tex., 605.) An assessment, however, is an altogether different thing from the tax-roll. By the assessment, the liability of the tax-payer is fixed. It ascertains the facts, and furnishes the data for the proper preparation of the rolls. To make an assessment, the officer or tribunal to whom the duty is committed, is required to ascertain and make an inventory or list of the property upon which the tax has been levied, and to estimate or determine its value. (Cooley on Taxation, 258.) When the property is listed and valued, the amount of tax for which the owner is liable is merely a matter of arithmetical calculation. While this amount should be shown and exhibited by the tax-roll, if properly prepared, it is not an essential part or requisite of the assessment.

The evidence in the record shows, with reasonable certainty,

that the property of appellants, as well as all other tax-payers of the county, was properly inventoried or listed, and valued by the justice of the peace for the precinct in which it was situated. If in some instances, when the tax-payer owned property in different precincts, it was, for his convenience, valued in the precinct in which he lived, it is testified that this valuation was submitted to the justice of the precinct in which it was situated for his ratification and approval. When the justice of the precinct in which the property was situated approved of the valuation thus made, it became in effect his act. The statute does not in direct terms prescribe fully and precisely what the tax-roll shall set forth or exhibit. This seems to be determined by the instructions and regulations of the comptroller. The seemingly contradictory instructions given by this officer, which we find in the record, the dates of which, however, are not shown, renders it impossible for us to say whether his instructions have been fully complied with or not. But it is quite certain that irregularities, or even a failure to make any precinct rolls whatever, can in no way affect appellants' liability to pay the taxes here in question. These rolls are to be made after the precinct assessments are completed. They therefore form no necessary part of the assessment. They do not go into the hands of the collector, and consequently do not serve as a warrant, or authority, for the collection of the tax. The consolidated rolls seem to conform in all essentials to the instructions of the comptroller, given in evidence by the appellee, except in its failure to show the amount of school-tax with which each individual tax-payer was chargeable. As this roll is the warrant by which the collector is authorized to demand taxes, and to seize and sell property in default of their payment, it should undoubtedly set forth and exhibit not only the list and valuation of the property of each individual tax-payer as shown by the assessment, but it should also show, in its appropriate column, the amount of each specific tax for which he is liable. This

omission in the roll should have been corrected and supplied, no doubt, as ordered by the County Court, when the defect was ascertained. But the neglect or failure of the court to see that this was done, certainly did not relieve the tax-payers from liability for the payment of the tax, and at most, it can only be said, that the roll, by reason of the omission, was an irregular or defective warrant for the collection of the tax, and would not justify the collector in the seizure of property for its payment. Whether this defect is of a character, however, to render the collector liable as a trespasser, in case he should levy upon or seize property of a tax-payer, while the roll in his hands did not set forth the amount of the tax for which he was in fact liable, although this was easily ascertained by arithmetical calculation from the per centum, or rate of tax, as levied by the Legislature, and the value of the property ascertained by its assessment as shown by the roll; and although the collector had been authorized by the County Court to make the correction,—we are not now called upon to determine. Whatever may be the effect of the omission, it certainly did not relieve appellants from liability for the tax, or entitle them to the interposition of a court of equity in their behalf. It does not appear from the instructions of the comptroller that the consolidated roll should show the school district in which the property is situated, upon which this tax was assessed. And there seems to be no necessity that it should do so. The collector does not distribute the tax, when collected, among the different school districts. The tax unquestionably belongs to the district in which it is collected. But a proper distribution can, no doubt, be readily made by the court from the inventories, or assessment lists, returned by the justices for their respective precincts. Be that, however, as it may, it is not a matter of which appellants can here complain, or into which the court can inquire in this suit.

The objection made to the tax of one tenth of one per cent. is, that power to levy a tax to meet the interest and provide

a sinking fund for the payment of the bonds issued by Galveston county, by authority of the act of the Legislature, of November 29, 1871, is not given by said act. We are unable to perceive the force of this objection. The validity of the tax depends upon the authority of the county to make the levy, and not upon the fact that it is conferred in the act authorizing the issuance of the bonds, rather than by some other statute. The act authorizing the issuance of the bonds, in clear and unmistakable language, directs and requires the county to provide for the payment of the interest upon them, and for a sinking fund to meet the principal, "under the laws now in force." It thus, as we think, clearly appears that according to the legislative interpretation of the existing laws, the county had the authority to provide for the payment of the principal and interest of the bonds. If it was authorized to do this, it could, unquestionably, only do it by levying a tax. That the county was fully authorized to levy a tax to pay these bonds, by the existing statutes, without the aid of legislative construction, by the act authorizing their issue, is, we think, plain beyond all question. To pay its debts, and provide for the discharge of its just liabilities, is certainly "a county purpose," as well as a legal duty. The act of August 13, 1870, organizing County Courts, expressly delegates to said courts ample power and authority to levy and collect taxes "for county purposes."

If, however, any reasonable doubt could be entertained as to the authority of the county to provide for the payment of the principal and interest of these bonds under the laws in force when said special act was passed, there could be little question, we think, that the special act itself would be found amply sufficient, without a strained construction of it, to warrant the levy of this tax.

There is no error in the judgment, and it is therefore affirmed.

AFFIRMED.