### B. C. TABER ET AL. v. STATE OF TEXAS.

Decided February 4, 1905.

**1.—Taxation—County School Land—Executory Sale.**

The constitutional provision exempting county school lands from taxation does not apply where such lands have been sold by the county, although the sale is by an executory contract only, with a condition of forfeiture in case of noncompliance by the vendee with its terms as to making the payments called for therein, and, such payments not being yet all due, no deed has been executed by the county.

**2.—Same—Executory Sale not an Option.**

An executory contract of sale of land can not be regarded as merely an option to buy, since it vests title in the purchaser, rendering the land subject to execution and taxation as his property.

**3.—Same—Assessment for Taxes—Irregularity—Owner's Name.**

Where in the assessment of unrendered lands by the tax assessor there was an inaccuracy in stating the owner's name, but elsewhere in connection with the assessment the name was correctly stated, such irregularity did not vitiate the assessment.

Appeal from the District Court of Archer. Tried below before Hon. A. H. Carrigan.

*Matlock, Miller & Dycus,* for appellants.—1. Lands granted to a county by the Republic or State of Texas for educational purposes are exempt from all manner of taxation. Sec. 69, art. 11 of the Constitution of 1876; Doherty v. Thompson, 71 Texas, 192; Art. 5065, Rev. Stats. of 1895; David v. Burnett, 77 Texas, 3; Land and Cattle Co. v. Board, 80 Texas, 489.

2. The Dallas County school land being exempt under the Constitution and laws from taxation, and the title to said land being still in Dallas County and the defendants herein having no title, but a mere right to acquire title, the land is not taxable as the property of defendants. Davis v. Burnett, 77 Texas, 3; Taylor v. Robinson, 72 Texas, 364; Tracy v. Reed, 38 Fed. Rep., 73; Pitts v. Booth, 15 Texas, 455; Upshur v. Pace, 15 Texas, 533; Abney v. State, 47 S. W. Rep., 1044; Railway v. Prescott, 16 Wall., 603; Railway v. McShane, 22 Wall., 445; Wisconsin Central Ry. Co. v. Price County, 133 U. S., 496; Northern Pac. Ry. Co. v. Trail County, 115 U. S., 601; State v. Mississippi River Bridge Co., 35 S. W. Rep., 594; Chicago & Alton Ry. Co. v. People, 38 N. E. Rep., 1075; Graff v. Ackerman (Neb.), 57 N. W. Rep., 512; Duncan v. Newcomb (So. Dak.), 69 N. W. Rep., 581; Slaughter v. Coke Co., 79 S. W. Rep., 869; Dunaway v. Day (Mo.), 63 S. W. Rep., 731.

3. There was a fatal variance between the pretended list and assessment showing the property to be that of unknown owner and the tax rolls which showed it to be the property of B. C. Taber & Company. Rev. Stats. of 1895, arts. 5107, 5119, 5126; State v. Farmer (Texas Sup.), 59 S. W. Rep., 542; Clegg v. State, 42 Texas, 610; Weltz on Assessments, p. 6; Plummer v. Marathon Co., 46 Wis., 177; Tiernet v. Lumber Co., 47 Wis., 248; Schieber v. Kahler, 49 Wis., 301; Marshall v. Benson, 48 Wis., 565; Power v. Kindschi, 58 Wis., 539; 46 Am. St. Rep., 652; State v. Kendrick (Mo.), 60 S. W. Rep., 1063; McReynolds v. Longenburger, 59 Pa. St., 13; Houghton v. Hall, 47 Vt., 333; Bode v. Invest. Co., 6 Dak., 499.

*W. E. Forgy* and *C. H. Henley,* for appellee.—1. There is no fatal variance between the assessment and the tax rolls. Arts. 5119, 5126, Rev. Stats. of 1895; George v. Dean, 47 Texas, 73; Hernandez v. City of San Antonio, 39 S. W. Rep., 1022; State v. Bremond, 31 Texas, 116; Arts. 2085, 5107, Rev. Stats. of 1895.

2. Lands granted to a county by the Republic or State of Texas for educational purposes are exempt from taxation so long as the same is owned or held by the county. But as soon as the same is held or owned under a contract of sale by an individual company or corporation then it becomes immediately subject to taxation. Art. 5087, Rev. Stats. or 1895; 17 Am. and Eng. Ency. of Law (1st ed.), p. 299; 25 Am. and Eng. Ency. of Law (1st ed.), p. 119; State v. Farmer, 59 S. W. Rep., 541; Garrett v. Christopher, 74 Texas, 453.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a judgment in favor of the State against B. C. Taber and J. B. Wilson for $442.90, the taxes for the year 1902 on the Dallas County school lands, situated in Archer County, with foreclosure of the tax lien. The main proposi-

tion relied on for a reversal of the judgment is thus stated in appellant's brief: "The Dallas County school land being exempt under the Constitution and laws from taxation, and the title to said land being still in Dallas County, and the defendants herein having no title, but a mere right to acquire title, the land is not taxable as the property of defendants."

November 23, 1900, B. C. Taber made a contract with the Commissioners' Court of Dallas County for the purchase of said lands at two dollars per acre, payable in twenty years, with interest payable semiannually in advance. On the following day a contract was executed in the pursuance of the order of said court, signed by the county judge of said county and B. C. Taber, which contained, among others, the following provision: "And it is especially provided that should the said party of the second part (B. C. Taber), or his legal heirs or assigns, fail or refuse for sixty (60) days after one of the semiannual interest payments becomes due, to pay the same, then this obligation to become null and void, and of no binding effect on either party hereto, and in that event all the appurtenances and improvements situated thereon shall become the property of said Dallas County, or her legal assigns; and the party of the second part hereby agrees and binds himself, his heirs and assigns, to quit and surrender said premises, together with all the appurtenances and improvements situated thereon, and the party of the first part may reenter and take possession of said premises and hold as in her former estate, and thereupon this contract of sale and everything herein contained, shall cease and become null and void, and all claims for damage by reason of such reentry is hereby expressly waived, and the party of the first part shall have no right hereunder for a specific performance hereof." The concluding paragraph was as follows: "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said party of the second part, his heirs and assigns forever, when the whole of said principal and interest has been fully paid. The party of the first part agrees and binds said Dallas County, himself and successors in office to make good and valid fee simple title to the above and foregoing described lands to said second party or his legal heirs or assigns, and to warrant and forever defend all and singular the said premises unto the said party of the second part, his heirs and assigns against all persons lawfully claiming or to claim the same or any part thereof."

Previous to this time Taber held the land under lease, with privilege of purchase, and thereafter held possession under the contract of purchase, paying interest as therein provided.

April 26, 1901, Taber sold and conveyed to J. B. Wilson an undivided half interest in and to all his "right, title and interest in and to" said tract of land, referring to the contract with Dallas County as the source of his title and attaching the same to his conveyance to Wilson. Thereafter Taber and Wilson, under the firm name of B. C. Taber and Company, held possession of the land and made no default in the payment of interest.

Our conclusion from these facts is that appellants, Taber and Wilson,

held the Dallas County school lands during the year 1902 as purchasers from Dallas County, and that the constitutional exemption claimed by them was not available. True, the contract of purchase under which they held was by express stipulation subject to forfeiture for failure to pay interest, but in this respect it was not materially different from other executory contracts of purchase, which are subject to forfeiture for default of the purchaser. The contention that appellants acquired only an option, which is the purchased privilege of either buying or selling something at a specified price within a specified time, is not sustained by the record. They acquired more than the privilege of buying, for that privilege they exercised; they acquired the right to a title on complying with the conditions of the purchase, which were conditions subsequent only. The written proposition submitted to the Commissioners' Court of Dallas County by B. C. Taber was one for a purchase outright, and neither in it nor in the order accepting it was any reference made to any condition of forfeiture. That seems to have been inserted by the county judge in drawing up the contract of sale, evidently for the protection of the county, and did not have the effect of reducing what was otherwise undoubtedly a contract of sale, as embodied in the proposition and order of acceptance, to one for a mere option to buy.

That our tax laws should be construed, as they long have been, to require the vendee holding lands under an executory contract of sale to pay the taxes assessed against such lands, we entertain no doubt. Lands so held are subject to execution as the property of the vendee, and the title of such vendee will support an action of trespass to try title. The fact that a county is the vendor ought not to change the legal status of such vendee. True, it has been held that county school lands, so long as they remain the property of the county, are exempt from taxation, even in the hands of a lessee (Dougherty v. Thompson, 71 Texas, 192), but after the lands are sold by the county they become the property of the vendee for purposes of taxation, as well as of execution, even though the sale be on a credit and the contract executory. It would certainly be unreasonable to treat a county selling its school lands on a credit as owner both of the notes or obligation taken for the purchase price and of the land. True, the county is not entirely divested of title to the lands until they are finally paid for, but until a forfeiture or rescission takes place on account of the default of the purchaser, the purchaser is to be regarded as the owner, and the lands may be sold for taxes as his property.

The minor questions raised relate to defects in the assessment, and will be briefly noticed. Appellants failed to render the lands for taxes for the year 1902, and in making the assessment the county assessor used "B. C. Taber and Wilson" to designate the owner, placing their names on the inventory in connection with several assessments to unknown owners, and low down in the columns headed "Certificate of Scrip No." and "Survey No.," but in parenthesis, and opposite "Dallas Co. Sch. Ld." under the head of original grantee, and also opposite the abstract number of said land, the proof showing it had no certificate or survey number. The acres rendered and value assessed appeared at the proper places on the inventory. The name of the owner given on the tax roll was as follows: "B. C. Taber & Co." These and other

defects complained of did not, in our opinion, invalidate the assessment, being mere irregularities. An inspection of the tax inventory copied in the record leaves little room for doubt as to what was meant by the assessor in placing "B. C. Taber and Wilson" where he did on the list, which was opposite the abstract number, the name of original grantee, the number of acres and the value thereof. The land was thus sufficiently identified, there being no certificate or survey number, and any mistake in the name of the owner would not affect the tax lien on the land. (Rev. Stats., art. 5085.) Besides, the firm name seems to have been corrected on the tax roll, as provided in article 5120 of Revised Statutes.

The supplemental roll offered by appellee for the year 1901 was properly excluded because it lacked the affidavit of the assessor required by article 5130 of Revised Statutes. (Clayton v. Rehm, 67 Texas, 52.

Judgment affirmed.

*Affirmed.*

Writ of error refused.