**CROCKER v. SANTO CONSOL. INDE-
PENDENT SCHOOL DIST. et al.**

No. 1774.

Court of Civil Appeals of Texas. Eastland.
April 15, 1938.

Rehearing Denied May 13, 1938.

Ritchie & Ritchie, of Mineral Wells, for appellant.

McCall & McCall, of Weatherford, for appellees.

## FUNDERBURK, Justice.

Santo Consolidated Independent School District, interchangeably also denominated Santo Consolidated Independent County Line School District, sued Miss Cornelia B. Crocker for taxes in the principal sum of $481.09, with interest, penalties, and costs, claimed for the year 1931 to 1935, inclusive; due upon land situated in said district; and to foreclose the tax lien. The Federal Land Bank of Houston was joined as a defendant upon the ground that it was claiming some interest in the land and in order to make the foreclosure effective as to it.

Miss Crocker answered by general demurrer, special exceptions, general and special denials, and other pleas. The Federal Land Bank answered only by a claim over against its codefendant for judgment for any amount it should pay upon the judgment against its codefendant. In a nonjury trial judgment was given for plaintiff against the defendant Crocker as prayed, except taxes, etc., for the year 1931. Judgment was also awarded said land bank against Miss Crocker as prayed. The latter has appealed.

Appellant specially denied under oath the valid corporate existence of appellee school district, and particularly that it included within its purported boundaries the lands of appellant upon which the taxes were claimed to be due and delinquent. To this part of the answer the court sustained exceptions and struck it out. If there was any error in such action, as contended under appellant's first proposition, we think it was affirmatively shown to be harmless. It is true that by provision of R.S.1925, art. 2010, in order to join issue upon the allegations of plaintiff's petition whereby it was averred that said school district was duly incorporated, it was necessary for the defendant to verify her denial of such allegation. But we know, as a matter of law, that in this state all school districts are corporations. 37 Tex.Jur. p. 864, § 16. Appellee district, in our opinion, made sufficient prima facie proof that it was duly incorporated by introducing in evidence the order of the commissioners' court of Palo Pinto county, made August 10, 1931, declaring the result of consolidation elections in Santo Independent School District and Pickens Common School District No. 40. This much it was perhaps required to do, regardless of the stricken pleadings. But whether so or not, the stricken part of the answer could have served no other purpose than to require the production of such proof as was made by introducing said order. Whether necessary or not it was indisputably shown that the purported consolidated district had functioned as such during all the time in which the property had been assessed for the taxes claimed. Unless the order on its face shows that the attempted consolidation was void, which we think it does

not, it was admissible in evidence. There was, it appears, no burden resting upon appellee to prove the validity of the several preceding steps which finally culminated in the declaration of the result of such elections. If it should be conceded that appellant would have the right to show that the consolidation of the two districts was void because of some act or omission involving a precedent jurisdictional requisite —a question we find it unnecessary to determine—such issue would not be presented by a mere special denial whether verified or not; but it would be necessary for the defendant to present it by an affirmative defensive plea and to assume the burden of establishing it by proof. If, as we think, appellee was under no necessity of introducing the petitions for the elections, the orders calling the elections, or the notices or returns of the elections, then no question of the validity of any such proceedings could be raised by mere objection to the admissibility of the evidence. Such evidence would be without the scope of the issues joined by the pleadings and inadmissible for that reason, but not involving any such question as the right or capacity of appellant to make a collateral attack upon the validity of the appellee district.

■ It is next contended that it was affirmatively shown regarding the two elections held in August, 1931, by which Santo Independent School District and Pickens Common School District No. 40 were purported to be consolidated, that the notices of election in each district were posted in the other district with the result that no notices were posted in either district applicable to the election therein held; hence, there was no authorized consolidation of the districts and consequently no authority to tax the lands of appellant situated in the former Pickens Common School District. Conceding that the evidence did establish such fact, it is pertinent to inquire, we think, to what issue made by the pleadings was such evidence applicable? Our conclusion is that there was none. Had appellant alleged as a special defense that the purported consolidation was void because no notices of election were posted, then the question would arise whether appellant could make such collateral attack, as manifestly it would be, upon the consolidation proceedings; and further, if so, whether the affidavits to the notices conclusively established the invalidity of the elections and consequent invalidity of

the purported consolidated district. Parenthetically it may be stated that we know of no law requiring the county judge to make affidavit to the posting of notices in consolidation elections, and it may be questionable if such affidavits were competent as evidence. As said before, these questions in our opinion are not material because no issue regarding same was joined by the pleadings. It seems to be appellant's view that the burden was upon appellee to prove that valid notices of election were posted and that the proffered evidence was not admissible to establish such fact; but since it is our view, already expressed, that the introduction of the order declaring the result of the consolidation elections was sufficient prima facie to discharge the burden resting upon appellee, and appellant having tendered no defensive plea asserting the invalidity of the consolidation because of the lack of election notices posted in the districts, or other reason, no such issues were in the case. If by reason of noncompliance with one or more requirements, other than the tax elections hereinafter discussed, essential to confer upon Santo Consolidated Independent School District, the power to provide for the levy, assessment, and collection of taxes claimed, or, in other words, if the attempted formation of the consolidated school district was void appellant, if she had the legal capacity to do so, had the burden of alleging and proving the facts of such invalidity as a matter of defense. No defensive plea tendered the issue which it is contended was established as above stated. Hence, there is no occasion to consider whether if such plea had been made the law would permit the collateral attack under the existing circumstances.

■ It was necessary in order to authorize a judgment in its favor for appellee to prove that it was a school district which had been formed by the consolidation of the former Santo Independent School District with the Pickens Common School District; that taxes for the purposes and in the amounts claimed had been authorized by one or more elections as the condition upon which such taxing power is delegated by the Legislature to the school district and that the taxes claimed had been duly levied, assessed, and were due and unpaid. As said before, it discharged this burden prima facie as to its capacity by introducing the order declaring the result of the consolidation elections and defining the limits and bounds of said

district. Appellee formally admitted that the taxes, if any due, were unpaid.

The order declaring the result of the consolidation elections and describing the boundaries of the district sufficiently evidenced the fact, we think, that a part of the John Bird Survey No. 27, upon which appellant's land was located, was located in the district. A call from the N E corner of T. P. R. R. Co. Survey 33 on the Brazos River, "Thence W to S W cor of Survey 42," was evidently erroneous. Either the direction or the corner called for was wrong. Assuming that the error was in the direction and the corner was correct, the next call could not be applied; but assuming that the direction was correct and the call for the corner error, then the next call can be given effect provided it be assumed that the corner intended was the N W cor of 32. Reversing the calls, the N W cor of 32 will be reached. We, therefore, conclude that it is thereby shown that the call was intended to be "Thence W to the N W cor of 32" and is sufficient.

Due levy and assessment of the taxes for the years 1931 to 1934, inclusive, were attempted to be proved by the introduction in evidence of: (1) A delinquent tax record covering the years 1928 to 1934, inclusive; (2) the annual tax rolls for each of the years 1931 to 1934, inclusive; and (3) the assessment lists for each of said years. The levy and assessment of the taxes claimed for the year 1935 were sought to be proved by introduction in evidence of the annual tax roll, (?) the delinquent tax list, and the assessment list for said year. Objection to the admission of said annual tax rolls was made on the ground that they were not authenticated by the affidavit of the tax assessor as required by R.S.1925, art. 7222. Objection to said delinquent tax record was made on the ground that it was compiled from said annual tax rolls, which not being legally authenticated as just stated, rendered the delinquent tax record likewise inadmissible. The introduction of the delinquent tax list for the year 1935 was objected to on the ground that the certificate thereto of the trustees showed that "the roll was a list of delinquent taxes on personal property." No assignment of error questions the admissibility of any of the assessment lists.

We are of the opinion that the evidence was admissible as against the objections made. In support of appellant's contention that the annual tax rolls were inadmissible, she cites and relies upon R. S.1925, arts. 7222, 2792; Clayton v. Rehm, 67 Tex. 52, 2 S.W. 45; Taber v. State, 38 Tex.Civ.App. 235, 85 S.W. 835; Friedner v. City of Galveston, Tex.Civ.App., 229 S.W. 950. The question is: Where the annual tax rolls are made up in all respects as required by law, except as to the affidavit of the tax assessor as required by said article 7222, which is omitted, are said rolls inadmissible in evidence in a suit to recover the taxes and foreclose the tax lien? It may be assumed, without decision, that such a roll would alone be insufficient as proof. That is not the question. Here the county tax assessor, charged by law, under the circumstances shown, with the duty of assessing the taxes, and of making and authenticating the rolls, under oath upon the witness stand identified the rolls in connection with the original assessment lists and testified that the rolls were prepared from the lists and had been used in the collection of taxes and that they were correct.

Tax rolls perform more than one function. They serve as a record of voluntary tax payments and means of reporting and accounting. They also serve as a warrant to the tax collector to exercise extraordinary powers. The law provides that the tax collector shall "by virtue of his tax roll, seize and levy upon and sell" personal property, article 7266, or real estate, article 7275. If the rolls were not authenticated as required by said article 7222, no title would pass by a sale of property for taxes. The unauthenticated roll would be incompetent as evidence of the ownership of the property by the purchaser. As supporting this view Clayton v. Rehm, supra, and the decisions following it, are undoubtedly good authority.

But to hold that an otherwise properly authenticated tax roll is not admissible in evidence in a suit to establish the amount of taxes due as a debt and to establish and foreclose the tax lien securing such debt could, it seems to us, be justified only upon the theory that the tax payer's liability for the taxes and subjection of the property to the tax lien do not arise, or exist, unless and until such affidavit is made and attached to the tax roll. Such a theory is believed to be untenable. If the legal existence of a school

district and consequent capacity to impose taxes be assumed, the liability of a person to pay taxes arises from a legal levy and assessment. The affidavit to the tax roll is no part of a levy or assessment. Even a tax roll itself is not essential to a valid levy or assessment. In George v. Dean, 47 Tex. 73, 86, it was pointed out that an assessment and a tax roll were different things. It was held that there could be a valid assessment even without a tax roll. It was said: "By the assessment, the liability of the taxpayer is fixed. It [that is, the assessment] ascertains the facts, and furnishes the data for the proper preparation of the rolls. To make an assessment, the officer or tribunal to whom the duty is committed, is required to ascertain and make an inventory or list of the property upon which the tax has been levied, and to estimate or determine its value. (Cooley on Taxation, 258.) *When the property is listed and valued,* the amount of tax for which the owner is liable is *merely a matter of arithmetical calculation.* While this amount should be shown and exhibited by the tax-roll, if properly prepared, *it is not an essential part or requisite of the assessment.* * * * As this roll is the warrant by which the collector is authorized to demand taxes, and to seize and sell property in default of their payment, it should undoubtedly set forth and exhibit not only the list and valuation of the property of each individual tax-payer as *shown by the assessment,* but it should also show, in its appropriate column, the amount of each specific tax for which he is liable. * * * But the neglect or failure of the court to see that this was done, certainly did not relieve the tax-payers from liability for the payment of the tax, and at most, it can only be said, that the roll, by reason of the omission, was an *irregular or defective warrant for the collection of the tax, and would not justify the collecton in the seizure of property for its payment."* (Italics ours.)

See, also, Republic Ins. Co. v. Highland Park Independent School District, Tex.Civ.App., 57 S.W.2d 627, 628.

Thus it appears that a valid assessment is not dependent upon the tax roll and therefore more certainly not dependent upon a mere affidavit required to be attached after the completion of the roll. The decision from which the above quotation is made and the decision in Clayton

v. Rehm, supra, are self-distinguishing. Together they seem to us to support the proposition that the purpose and effect of the affidavit prescribed in said article 7222 is to give to the tax roll the effect of a self-evidencing warrant or power to the tax collector to seize and sell the property for taxes and convey title thereto to the purchaser.

Under this view would mere evidence that the delinquent tax record for the years 1931 to 1934, inclusive, was prepared from the annual tax rolls for said years, having the affidavit omitted, render such delinquent tax record inadmissible in evidence? We think not. In addition the assessment lists for each of the years 1931 to 1935, inclusive, were introduced together with the testimony of the tax assessor identifying and explaining same and showing how the annual tax rolls were made up from same, presumably after being approved by the commissioners' court, and thereafter were used in the collection of all taxes paid voluntarily.

It was necessary for the assessment lists in order to constitute assessments to be approved by a board of equalization. Chisholm v. Adams, 71 Tex. 678, 10 S.W. 336. As to all assessments made by the tax assessor of Palo Pinto county for appellee district, the board of equalization was the commissioners' court of Palo Pinto county. Miller v. Vance, 107 Tex. 485, 180 S.W. 739. No question is presented by any of appellant's assignments of error that the assessment lists were not admissible because not shown to have been approved by said commissioners' court. George v. Dean, supra, is authority, we think, to the effect that approved assessment lists constitute the best possible evidence of assessment. The only variance that could exist between such lists and the tax rolls prepared from same would consist of errors in calculation. These, if any, the commissioners' court would be presumed to have corrected in the rolls themselves in the performance of the duties imposed by R.S.1925, art. 7224. Under these circumstances we can see no reason to hold that the delinquent tax record, or any annual delinquent tax list should not have the effect declared by law to establish prima facie the amount of taxes and costs due, R.S.1925, art. 7326, and that, "all the requirements of the law have been complied with * * * as to regularity of listing, assessing and levy-

ing all taxes," etc. R.S.1925, art. 7336, Vernon's Ann.Civ.St. art. 7336.

Some confusion is manifest in the record, largely due no doubt to a like confusion and indefiniteness in various statutory provisions, regarding the nature and functions of renditions of property and assessments of property, particularly the manner of listing or otherwise evidencing renditions and assessments. It should be borne in mind that a taxpayer never assesses his property for taxes. Not even a commissioners' court has authority to do that. The assessment of property is peculiarly the duty and responsibility of a tax assessor. The jurisdiction of the commissioners' court with reference to assessments is confined to raising or lowering assessments as incident to its duties as a board of equalization. It has no power to add property to the tax rolls not previously assessed, nor to take property from them. Davis v. Burnett, 77 Tex. 3, 13 S.W. 613; Galveston County v. Galveston Gas Co., 72 Tex. 509, 10 S. W. 583. The taxpayer lists or inventories property by describing it and placing a value upon same. He may make the list himself, or merely furnish the information to the assessor. If the assessor agrees to the rendered valuations, he, ·the assessor, makes the rendered valuation the assessed valuation, or, if he does not agree, he ·is required to note the assessed value on the same list, subject in either case, to final action by the board of equalization as to raising or lowering it. R.S. 1925, art. 7211. Thus the rendition·lists become also assessment lists. When after legal levy such assessment lists are corrected and approved by the board of equalization the liability of a taxpayer is thereby fixed. If the same property is located in a school district wherein the same tax assessor is charged with the duty of assessing school taxes there is no necessity for any other rendition or assessment list. Miller v. Vance, supra. There is not even a necessity for a separate tax roll. Rhomberg v. McLaren, 2 Tex.Civ. App. 391, 21 S.W. 571. We think the tax assessor in this case had just as much authority by agreeing·to the rendition valuations to make of the rendition lists his assessment lists for school taxes as for state and county taxes, subject, of course, to the absolute limitation that he could not assess for school purposes any part of the land not located in the district. The presumption would obtain that he had not done so.

It is not entirely clear that the annual tax roll for the year 1935 was offered or introduced. An instrument labeled "Delinquent Tax Record of Delinquent Taxes Due the Santo Independent School District for the Year 1935" was introduced. It contained a purported certificate of approval by the board of school trustees and a certificate by the county tax assessor and collector of Palo Pinto county. It is apparent, we think, that this was the "list of the lands and lots and/or property" provided for in R.S.1925, art. 7336, amended, Vernon's Ann.Civ.St. art. 7336. Objection to the introduction of the list in evidence was made on the ground that the certificate of approval showed it to be a list of personal property only. We think it clear from the entire certificate taken in connection with the list itself that by the words "who rendered to taxes only personal property" was meant "who rendered for taxes no personal property." According to the tax assessor's certificate, the list included "only lands and lots that have been reported delinquent or sold to the State for taxes for said years," etc., and the recited authority for making same is readily identifiable with that provided in said article 7336.

The contention to the effect that the court erroneously permitted the tax assessor "to affix to said annual roll [1935] at the trial of this cause in 1936 a certificate to the same" is not, we think, properly included as the ground of error in any of the assignments of error. The "annual roll" thus referred to means as already said the delinquent list provided for in article 7336. As such, it is something different from the annual tax roll. The seventeenth assignment is the one relied upon to present the point. Bearing in mind that the subject matter of assignments of error consists of actions or rulings of the court, it appears the only actions or rulings of the court alleged as grounds of error in said assignment are "admitting in evidence" said instrument and "in rendering judgment against defendant." Distinct from either of these was the action of the court in permitting the certificate to be attached, which not being made the ground of error in any assignment should be held to be waived. ·

But even if sufficiently assigned, unless we have overlooked it, there is no provision as to certifying such a list.

■■■■ We are inclined to think the court erred in admitting certain so-called nunc pro tunc orders of the board of trustees levying taxes for each of the several years for which taxes were claimed to be due. The reason assigned for making the nunc pro tunc orders was that the record showing the annual tax levies had been lost. If so, the proper procedure was to establish the fact and contents of such orders by parol evidence, and not by orders nunc pro tunc. But for the effect of the delinquent tax record for the year 1934 and prior years and the delinquent tax list for the year 1935 as presumptive evidence of the due levy of the taxes, it may be doubted whether sufficient proof of any such levies was made. In view of such presumption, however, the question may be said to be: Did the evidence introduced for the purpose of showing that proper orders levying the taxes were made have the contrary effect of rebutting the presumption of such levies? It is our conclusion, however, except as to the year 1935, that the evidence cannot be said to have such effect. Unless the presumption was conclusively rebutted appellant would be bound by the finding implied from the rendition of judgment for the appellee.

■■■ As to the levy of taxes for the year 1935 the records being available were introduced in evidence. They show a form of order prepared and submitted for adoption and entry by the board of trustees, but show no action by the board. It fails to show a valid levy under the authority of Geffert v. Yorktown Independent School District, Tex.Com.App., 290 S.W. 1083. According to this authority the evidence offered to show a valid levy not only fails to so show, but rebuts an otherwise existing statutory presumption thereof. Hence, we think there was error in awarding recovery of the taxes claimed for said year 1935.

As before stated, a part of the burden upon appellee was to show that the power of the school district to levy and assess the taxes claimed had been authorized by one or more elections, such elections being conditions precedent upon which the power of taxation is delegated by the Legislature to school districts. We are of the opinion that evidence consisting of orders declaring the result of tax elections would have been sufficient prima facie proof. As said before regarding proof of the valid existence of the district it would not, we think, be necessary for appellee to have proved all the different steps preceding and leading up to the declaration of the result of an election or elections which conferred the requisite authority.

■■■ There was no evidence showing the result of any election authorizing the school district to levy and collect taxes for any purpose and particularly for the purpose of paying bonds. The introduction of the delinquent tax record and the delinquent tax list while, as we have said before, supplies by presumption prima facie proof of a valid levy and assessment of the taxes for the years 1932 to 1934, inclusive, such presumption presupposes that capacity to levy and assess the taxes had been acquired as the result of necessary elections. The fact of holding and the result of such elections must be proved. If prior to consolidation either district had by elections acquired the capacity to tax the property, then for any authorized school purposes there was no competent evidence thereof. There was some hazy testimony to the general effect that two or more assumption elections were held after the consolidation. Apparently it was designed to reinforce evidence to show that annual levies were made. We cannot escape the conclusion that the references in the testimony to any such elections was so indefinite and lacking in any probative value as to constitute no evidence at all. It seems to have been shown without dispute that at the time of the consolidation Santo Independent School District had a bonded indebtedness and Pickens Common School District did not. There was no character of evidence remotely tending to show that any election had been held authorizing the taxation of property in the former common school district to pay bonds.

For these errors it is our conclusion that the judgment of the court below must be reversed and the cause remanded, which is accordingly so ordered.