## JOY et al. v. CITY OF TERRELL.

### No. 12846.

Court of Civil Appeals of Texas. Dallas.

June 15, 1940.

Rehearing Denied Oct. 5, 1940.

Bailey & Hammerly, of Chickasha, Okl., Bond, Croft & Bond, of Terrell, and Fred T. Porter, of Kaufman, for appellants.

Morris Brin, M. F. Cate, and J. P. Coon, all of Terrell, and Ross Huffmaster, of Kaufman, for appellee.

YOUNG, Justice.

The City of Terrell sued the directors and stockholders of City Sewerage Company, a dissolved corporation, for the year 1936 taxes, in which the State of Texas and County of Kaufman intervened on a similar claim. In a trial to the court, judgments

were rendered for the respective tax bodies, primarily against directors M. A. Joy, W. B. Joy, Robert L. Warren and D. M. Purvine; and secondarily, against remaining named stockholders, which action of the trial court has resulted in this appeal.

Detailed findings of fact were made upon request of defendants in said cause, from which the following statement is taken: Terrell is a municipal corporation, operating through a Commission of five members, under special charter granted by the 32d Legislature, Loc. and Spec.Acts 1911, c. 51, and amendments thereto, voted by the electorate, as authorized by Art. 1165, R.S. (Home Rule). City Sewerage Company, a private corporation of $100,000 capital stock, divided into 1,000 shares, had owned and operated a sewerage plant in said City under local franchise, granting to the municipality option to buy the same, which was exercised by a purchase of all Sewerage Company properties September 12, 1936, for $72,000 cash paid by the City of Terrell; a Resolution of the Company directors, preceding such sale, providing "that when said purchase price shall have been paid and the debts of said City Sewerage Company settled, that a pro rata distribution of the amount, which shall then remain, shall be made among the stockholders of this corporation"; that the sewerage concern owned its plant on January 1, 1936, and had voluntarily rendered its property for taxation to plaintiff City, through sworn inventory, with valuation of $37,525. In like manner, county and state tax valuations were rendered to the Kaufman County tax assessor-collector for such year. The findings were, further, that under the City ordinance fixing the tax rate, the sum of $750.50 was due for 1936 taxes, the total amount, plus interest and penalty, less credits, being $812.36; similarly, that the accrued county and state taxes were $544.85 at time of suit; that immediately upon sale of the sewerage system in September, 1936, the directors, by resolution, had wholly disbursed the $72,000 received for its properties by paying $32,000 on its obligations, and a 40% distribution to stockholders, without paying the aforesaid 1936 taxes; the Sewerage Company later filing papers of dissolution. Another finding was that, following said cash distribution, the corporation remained without assets or funds to pay the aforesaid taxes, resulting in personal liability of the directors named. Intervener, State and County, sought to establish a lien for its taxes on the sewerage plant and property acquired by the City of Terrell, which was denied; defendant directors being held primarily liable and the other stockholders secondarily so, in the proportion of money that each had received as dividend on his stock.

■■ Appellants, by voluminous pleading in the trial court, and various assignments here, assail the validity of these tax judgments, but, preliminary to a discussion of said appeal on its merits, disposition will be made of their first three propositions: That intervener (State and County) was improperly permitted to become a party, because of no community of interest in the demands pleaded, or in the subject matter of the suit. Said intervener was, at least, a proper party to plaintiff's cause of action; sec. 28, Art. 30, City Charter; Art. 7345b, sec. 2, Vernon's Ann.Civ.St. A multiplicity of suits was avoided by such procedure, and the defenses urged to intervener's demand were, in all respects, similar to those asserted against plaintiff, i. e., a partial if not total invalidity of each assessment and judgment in fact and in law. No confusion or harmful effect seems to have resulted, or prejudice engendered by a joint trial of the tax demands in question, the hearing being before the court; Small-Lynch Co. v. Midwest & Gulf Co., Tex.Civ. App., 269 S.W. 163. Also to be noted in this connection was the claim of tax lien by the State and County upon the property acquired by the City from the Sewerage Company in September, 1936, for a municipal or public purpose. Intervener did not perfect an appeal from the judgment denying such relief, hence its cross-assignment complaining of error as against co-appellee City cannot be reviewed. Larson v. Middleton, Tex.Civ.App., 19 S.W.2d 120; Barnsdall Oil Co. v. Hubbard, 130 Tex. 476, 109 S.W.2d 960.

■ Next logically to be considered are defendants' propositions 9 and 16 as to intervener, that the 1936 tax roll relating to the City Sewerage Company was not verified as required by Art. 7222; and as to plaintiff, that the City tax roll was not certified to by the assessor-collector, precluding both instruments from being competent evidence in a tax suit to establish liability for the amount of taxes alleged to be due. Together with the introduction of the county tax roll, this further evidence appears: (1) Order of Kaufman County Commissioners, fixing and levying the tax rate for 1936. (2) Certificate of the County Judge and

Commissioners, constituting the Board of Equalization, of date October 1, 1936, approving the current tax roll as being correct. (3) Certificate of Mrs. Walter Beard, Tax Assessor-Collector (presumably under Art. 7222), recited as being sworn to and subscribed by affiant before Mattie Kincaid, Notary Public (such affidavit, however, not showing the signature of Mrs. Beard). (4) Sworn inventory of property rendered for assessment the same year by the City Sewerage Company; (5) that the taxes assessed against the Company were due and unpaid; all above testimony being developed through the witness Mr. Yates, deputy County Assessor. Conceding the absence of signature to the certificate, called for by Art. 7222, we still think the particular tax roll was sufficiently authenticated as to be admissible, and that a prima facie case of valid assessment and tax liability was shown. George v. Dean, 47 Tex. 73, 89; Crocker v. Santo Consol. Independent School Dist., Tex.Civ. App., 116 S.W.2d 750. The decisions relied on by appellant are, Clayton v. Rehm, 67 Tex. 52, 2 S.W. 45; Taber v. State, 38 Tex. Civ.App. 235, 85 S.W. 835; Friedner v. Galveston, Tex.Civ.App., 229 S.W. 950, but their inapplicability to the present facts is sufficiently discussed by Judge Funderburk in the Crocker case, supra.

■ Neither was the City tax roll rendered inadmissible by lack of affidavit, being authenticated by the City Secretary and Assessor, Mr. Riley, upon the witness stand. He identified the rolls in connection with the inventory made by the taxpayer and the original assessment lists; testifying that said rolls were regularly prepared and had been used in the collection of all taxes; that they were correct, and that the particular amount was due and unpaid. The ordinance fixing the 1936 tax rate and levy was introduced. Plaintiff's charter does not require a compliance with Art. 7222, or the state statutes relative to collection of delinquent taxes; and sec. 16, Art. 30, of said charter providing for the certificate of the city assessor, is applicable where the rolls alone are relied on for a prima facie case. Otherwise, we find no provision therein making it compulsory for the City Secretary to certify his rolls, and even the roll itself is not essential to a valid levy or assessment. Crocker v. Independent School Dist., supra.

■ ■ As to propositions complaining of error in the court's rendition of personal judgment against appellant directors, we think they are clearly liable to such extent under the present facts for all valid taxes due by the City Sewerage Company. Their corporation had voluntarily rendered its property to the respective tax authorities, which both Boards of Equalization had not disturbed. Such Company, by its ownership on January 1, 1936, became bound for the taxes of the year, though the property be sold before the amount thereof has been ascertained and before the payments became due. Carswell & Co. v. Habberzettle, 39 Tex.Civ.App. 493, 87 S.W. 911, City Charter, sec. 15, Art. 30. These amounts were positive obligations to the City, County and State, which the directors were required to discharge before liquidation, i. e., the distribution of all corporate assets, pro rata among stockholders; and appellant directors cannot deny that the surrender of their city franchise and transfer of all Company assets was a virtual corporate disintegration. Such was reflected in the resolutions of said directors at the time, where provision was made for ascertainment of the concern's obligations, payment thereof, and for said cash distribution. There was nothing thereafter for the corporation to do, except take the statutory steps leading to dissolution (Art. 1388). Appellants, therefore, by their affirmative acts, having diverted the Company properties from the payment of these taxes, would be personally liable to the extent of the assets thus lost to creditors. Love v. Gamer, Tex.Civ.App., 64 S.W.2d 393; Waggoner v. Herring-Showers Lbr. Co., 120 Tex. 605, 40 S.W.2d 1. They became trustees for the corporation after the sale and receipt of the $72,000, within the terms of the statute, Art. 1388, which says: "Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands." At said time, it is to be noted that appellant directors owned $92,900 of the corporation's entire capital stock.

■ Appellants' further assignments assert charter violations in the City's process of assessment; and defects in the ordinance levying taxes, for which the City's judgment is either wholly or partially void. Sec. 2, Art. 30, of the charter provides: *"Time Fixed to Levy Ad Valorem Tax.*—Upon completion of the tax roll by the Assessor and the approval of the same by the Board of Equalization and the total amount of the assessed valuation ascertained, the Commission shall at their next meeting, or as soon thereafter as practicable, proceed to levy all ad valorem taxes on all property situated

within the city of Terrell on the first day of January of the current year, and the Commission is especially [authorized] to levy the taxes for the year 1911." Bearing in mind the terms of the above section, it is argued that where the last member of said Board of Equalization is shown to have signed the completed tax roll October 15, 1936 the ordinance fixing the tax rate passed by the City Commission September 8, 1936, is void; it being obvious that the total amount of assessed valuation was not ascertainable and the tax rolls incomplete and not approved at the earlier date. These propositions are overruled. Some informality may have existed regarding the manner in which the City Secretary (tax assessor and collector) and the equalization agency discharged their respective duties, not affecting, however, the result, i. e., a substantial compliance with the charter. Mr. Riley, the Secretary, testified that he had completed his work on the assessment sheets, which written material later became the tax rolls; that he delivered them to the Equalization Board, who, in turn, completed their review and approval of the assessments by July 24; and that nothing was done by them after said date, except to sign the typewritten rolls. Having regard to substance rather than to form, we cannot say that either the tax official, Board or commission failed in the duties prescribed by sec. 2, or that the least difference would have resulted had this requirement been more strictly pursued. A charter change in the particular procedure to the more practical language of the State statute on the subject is suggested (Art. 7206).

■■ By propositions 6, 10 and 17, appellants challenge the validity of plaintiff's ordinance fixing the 1936 tax rate, in that same imposed a fine, penalty, or forfeiture for violation of its provisions, and, admittedly, was not published as required by the charter, Art. 5, secs. 7, 8, and State law, Arts. 1013, 1176b—1. The ordinance in question provides for an ad valorem tax of 65¢ on the $100 valuation of all real and personal property within the city (not exempt) for the current expenses of the local government; 75¢ for support and maintenance of its public schools; 22¢ for maintenance of fire department; 5¢ for Carnegie Free Library fund; 10¢ for permanent street improvements, and 23¢ for interest and sinking fund. Sections 8 and 9 read: "Section 8. Be it further ordained by the Commission of the City of Terrell: That if any person, firm or corporation shall fail or refuse to pay the taxes assessed against his, her or its property by this ordinance or other ordinances passed by the Commission of the City of Terrell, before February 1, 1937, shall be declared delinquent and a penalty of ten per cent (10%) on the entire amount of such taxes shall be collected and paid to the City of Terrell, as provided by law for the collection of delinquent taxes. Section 9. That if said taxes are not paid by the first day of February, 1937, the same shall bear interest from the first day of March, 1937, until paid at the rate of six per cent (6%) per annum, in addition to the ten per cent (10%) hereinabove provided for."

Sec. 6, Art. 30, of plaintiff's charter (a special act of the Legislature, effective March 20, 1911) provides, in part: "All taxes which are not paid by January 31st shall bear interest at the rate of 6 per cent per annum from March 1st, in addition to the 10 per cent penalty"; and the following is quoted from Sec. 23: *"Payment.—*All taxes shall be and become due and payable on the first day of October of each year, and if not paid before the first day of February thereafter, the same shall bear interest from the first day of March until paid at the rate of six (6) per cent per annum, in addition to the ten (10) per cent penalty hereinbefore provided. It shall be the duty of all persons from whom such taxes are due to call and pay the same to the Assessor and Collector of taxes, or such other officer as shall be designated by the Commission, at its office in the said city, between the first day of October and the first day of February." Sec. 24 deprives the Commission of any power to extend the time. Sec. 6, indefinite in itself, must be read with subsequent sec. 23, which plainly requires city taxes to be due and payable between October 1 of each year and February 1 thereafter, when interest and penalty shall definitely accrue. The governing body has no option on the subject, notwithstanding the language of sec. 4 that, "The Commission shall also determine when taxes shall be paid * * *". The City's organic law having specifically provided for penalty and interest on taxes not paid by a time certain, its terms are mandatory and self-operative; and a similar proviso in an annual tax ordinance is unnecessary and may be ignored. Nalle v. City of Austin, 41 Tex.Civ.App. 423, 93 S.W. 141; O'Connor v. Laredo, Tex.Civ.App., 167 S.W. 1091; 30 T.J., Municipal Corporations, sec. 272, p. 491; 44 C.J. sec. 4538, p. 1371. Ab-

sent the penalty feature just discussed, the particular ordinance is valid, in so far as non-publication is concerned.

A further major proposition of appellants (No. 12) is now stated: "Where the charter of a city prohibits the levying of a tax for general purposes and for permanent improvement of the streets in excess of 75¢ on the $100.00 valuation and does not permit the levying of a specific tax for the support of a fire department in any amount, and such city levies the full amount of 75¢ tax for current expenses and for permanent street improvements, and attempts to levy an additional 22¢ for the support of a fire department, the ordinance insofar as it levies such 22¢ is·null and void as being contrary tó the charter and in excess of such charter limits, and in excess of the charter limitation on the levy of taxes for general purposes, such part of said tax cannot be collected in a suit brought to recover same." The original charter (1911) empowered the City Commission of Terrell to establish and maintain a fire department, but authorized no specific tax therefor. In Art. 30, sec. 1, provision was made for the assessment and collection of ad valorem taxes, not to exceed $1.15 for general purposes; other taxes expressly authorized being for interest and sinking fund, general school purposes, and Carnegie Public Library. In 1913, by vote, Art. 30, sec. 1, was amended to fix the maximum rate of taxation at $1.95 on the $100 valuation, being in part: *"Tax— Power to Levy.*—The commission shall have the power to levy and to provide for the assessment and collection of taxes ad valorem on all taxable property, real, personal and mixed, within the limits of the city, not to exceed seventy-five (75¢) on the $100.00 valuation of taxable property for general purposes." At the same time, Art. 29 was amended by adding thereto, secs. 17, 18, 19, 20 and 21, from which we quote: "(17) The city commission each year, when levying taxes, as provided in this charter for general purposes, shall levy and set apart out of the gross taxes allowed to be levied for general purposes, at least twenty-five cents on the $100.00 valuation, of all taxable property, to be expended exclusively for the permanent improvement, repair and upkeep of the streets and bridges of said City of Terrell. (18) If the city commission shall deem it wise to do so, it may levy and collect for one year, more than twenty-five cents on the $100.00 valuation

of all taxable property, such excess over twenty-five cents to be exclusively used for the permanent improvement of the streets of said city; provided, however, that the amount levied for street and bridge purposes as herein set forth, together with the amount levied for general purposes, shall never exceed in any one year the sum of seventy-five cents on the $100.00 valuation, as specified in this charter." In 1919, also by vote, sec. 1 of Art. 30 was further amended by increasing the permitted tax rate to $2.25, and, pertinent here, providing: "The city commission of the City of Terrell, Texas, shall have the power to levy and to provide for the assessment and collection of taxes ad valorem on all taxable property, real, personal and mixed within the limits of the City of Terrell, Texas, not to exceed seventy-five ($.75) cents on the $100.00 valuation of all taxable property in said city for general purposes." Thus, it will be seen that all tax revenues of plaintiff City are allocated to the four funds already mentioned, the rate for all purposes not to exceed $2.25; each of the particular funds or purposes being limited by the above amendments to a specific per centum of taxes levied, beyond which it cannot go. A street and bridge fund seems to have been created by sec. 19 above, dominated, however, by the restraint of sec. 18, "that the amount levied for street and bridge purposes as herein set forth, together with the amount levied for general purposes, shall never exceed in any one year the sum of seventy-five cents on the $100.00 valuation, * * *." No authority is anywhere given the commission to levy a fire department special tax, indispensable as such department may be to municipal existence. In the absence of express provision therefor, tax disbursements for the upkeep of this governmental function are uniformly classified as current expenditures, to be paid out of current revenues. City of Sherman v. Smith, 12 Tex.Civ.App. 580, 35 S.W. 294; City of Denison v. Foster, Tex. Civ.App., 37 S.W. 167. That, by the plain wording of plaintiff's charter, its fire department must be supported out of the general purpose fund, there can be no doubt. Power to levy the special 22¢ tax in plaintiff's 1936 ordinance can only be inferred from the original charter power to establish and maintain such department, which inference, we think, disappears in the face of different and positive charter requirements. "Expressio unius est exclusio alterius". is the axiom to be applied. Aside

from this, it is a familiar principle that the authority conferred upon a municipal corporation, to exercise the taxing power, is to be strictly construed and closely followed. Wood v. Galveston, 76 Tex. 126, 13 S.W. 227; Frosh v. Galveston, 73 Tex. 401, 11 S.W. 402; State v. Etheridge, Tex.Com. App., 32 S.W.2d 828; Graham v. City of Fort Worth, Tex.Civ.App., 75 S.W.2d 930, writ refused. While plaintiff's tax rate for all purposes is well below the maximum of its charter amendments and state law, yet its people, at two elections, have failed to authorize a special tax for fire protection; on the other hand, expressly adhering to a 75¢ limit for general purposes, the only fund under the City's financial structure to which fire department expense can be charged. The local electorate alone is empowered to make valid the particular tax. Supreme Forest Woodmen v. City of Belton, Tex.Civ.App., 66 S.W.2d 439, writ refused.

■ Defendants' liability to plaintiff must be reduced to the extent of 22¢ on the $100 valuation; or (with $93 credit allowed) to the principal amount of $574.95, on which penalty and interest, after March 1, 1937, have accrued.

■ · Appellants' assignments are otherwise overruled. Proposition 7, invoking as a defense the provision of Art. 7329, "That the defendant was not the owner of the land at the time the suit was filed", refers only to a personal liability of the taxpayer, dependent upon title on January 1 of the year in which the taxes are due; and in proposition 8, even assuming an extinguishment of the City's tax lien on sale of the sewerage system to the City, the personal obligation of the Sewerage Company to pay the 1936 taxes was not affected, because of ownership at the beginning of said year.

The judgment of the trial court will be reformed as above indicated, with respect to the City's recovery, and, as reformed, is in all things affirmed.

Reformed and affirmed.

LOONEY, Justice (dissenting on rehearing).

After a more mature consideration of the question, I have reached the conclusion that, the Court erred in holding that, the $0.22 tax levy for 1936, by the Commission of the City of Terrell, for the support and maintenance of its fire department, was null and void, and in reforming the judgment in harmony with that holding. I am now of opinion that, the motion of the City of Terrell for rehearing should be sustained, that the former judgment of this Court reforming and affirming the judgment below should be set aside, and that, the judgment below should in all respects be affirmed. As the majority adheres to the original holding, I will state the reasons for my dissent.

A reading of the opinion by Associate Justice YOUNG discloses that, the contention of appellants, to the effect that, the levy of $0.22 for the support of the fire department of said City was null and void, because in excess of charter limitations, was sustained because the charter of the City contained no express provision authorizing the Commission to levy a special tax for the support and maintenance of the fire department; that, having expressly authorized levies for other purposes, the rule, "Expressio unius est exclusio alterius" applies, and excludes the idea that, the Commission was authorized to levy an additional tax for the support and maintenance of the fire department.

The rule of construction invoked, in my opinion, is inapplicable to the case under consideration; on the contrary, I think that, on a proper construction of the germane provisions of the City charter, and the pertinent provisions of the controlling statute, ample authority will be found, justifying the levy in question. In fact, the charter prescribes such a rule of construction. Sec. 6 of Article 31 provides that: "In the construction of any of the provisions of this charter, the intent of the section viewing the entire charter as a whole together with any particular section, shall be first considered. * * *"

The charter of the City of Terrell provides, Sec. 1 (i) of Art. 16, that, "The Commission of the City of Terrell shall have the following powers, towit: Section 1 (i) Fires—Power to provide for the protection against and the extinguishment of fires and conflagrations, and may provide for the establishment, regulation, maintenance and support of one or more fire companies and fire departments, for the purpose of guarding against calamities of fire. To provide and maintain suitable fire apparatus for the extinguishment of fire and erection and building and acquisition of houses for fire stations and the housing of such apparatus, * * *".

The express authority conferred upon the City Commission to establish, maintain and support one or more fire-fighting companies for the protection of the public against fires and conflagration, in my opinion, carried with it, by necessary implication, authority to levy and collect a sufficient amount of taxes, within the maximum prescribed, deemed necessary for the purposes named. Therefore, I do not think it was essential to a valid exercise of such authority, that the charter should have expressly authorized the levy and collection of such taxes; in fact, express authority to levy a tax for the support of the fire department, in view of the authority conferred to establish and maintain such a department, was entirely unnecessary. Under well-established rules of construction, express authority to levy such a tax under the circumstances would have been surplusage, as it would have added nothing to the authority of the Commission to make the levy.

The rule of construction just mentioned is stated in Dillon on Municipal Corporations, 5th Ed., Vol. 4, Sec. 1380, p. 2401, as follows: "Authority May be Implied— The legislative branch of the government has the exclusive power of taxation, but may delegate it, as above stated, to municipal corporations. When such corporations are created, the power of taxation, though generally conferred in express terms, may be held to exist by unmistakable intendment. When, for example, such corporations have, in order to execute a public work, been expressly vested with the authority to borrow money or incur an obligation, they have unless the contrary appears in the Constitution, or legislation of the state, the power to levy a tax to raise revenue wherewith to pay the money or discharge the obligation, without any special mention that such power is granted." Writing upon the subject, the San Antonio Court of Civil Appeals, in Moreland v. City of San Antonio, 116 S.W.2d 823, 825, writ refused, used the following pertinent language: "Such a grant carried with it, by necessary implication, the incidental authority to levy such taxes and expend such public funds as were reasonably necessary to the exercise of the general power expressly granted by the amendment. The authority to levy a tax and expend public funds was purely incidental to the power to advertise, and would have been fully implied whether provided for in the amendment or not. It was an authority exercisable by the board of commissioners by ordinance, and without having been voted upon by the electorate, so long as it was for a purpose authorized by charter or the general laws. The result is that the provision in the amendment for the levy, collection, and spending of taxes was surplusage and, except for the limitation thereof, amounted to no more than confirmation of an authority necessarily incident to and implied from the general grant of power to advertise."

So, applying this rule of construction to the situation under consideration, I think it follows, inescapably, that, the City Commission of Terrell was as fully authorized and directed to levy the tax of $0.22, for the support and maintenance of the fire department, as it was to levy taxes for the purposes expressly authorized.

The levy for 1936 was for the following purposes: To pay interest and create a sinking fund on bonds issued, .23; for the support and maintenance of schools, .75; for general purposes, .65; for street purposes, .10; for library, .05, and for the support and maintenance of the fire department, .22, aggregating 200.

Section 1 of Article 30 of the charter, as amended in October, 1919, is as follows: "Provided, however, the total tax rate here permitted to be levied shall not exceed Two and twenty-five one-hundredths ($2.25) Dollars, on the $100.00 valuation of all taxable property in said City for any one year, exclusive of the tax levied for the building of sidewalks, and inclusive of all taxes levied for bond issues." Thus, it will be observed that, the levy for all purposes in 1936, including the 22 cent levy for the support of the fire department, was well within the maximum limit, hence was in no sense excessive.

The view expressed in the original opinion (adhered to by the majority) is that, the only fund available for the support and maintenance of the fire department, was the fund created by the levy for "general purposes", and, as the charter limits the levy for general and street purposes to $0.75, the limit having been reached, that the attempt to levy 22 cents additional for the fire department was excessive, hence void.

No doubt that, in a comprehensive sense, the expense of maintaining and carrying on a fire department is a current expense, and general in nature, and unless otherwise provided for, could properly be discharged from taxes levied and collected

for general purposes, as was held in City of Sherman v. Smith, 12 Tex.Civ.App. 580, 35 S.W. 294, and in City of Denison v. Foster, Tex.Civ.App., 37 S.W. 167. However, in view of its express authority to establish and. maintain a fire-fighting department, I think the City of Terrell, under its power to levy "any general or special ad valorem tax. for any purpose not inconsistent with the Constitution * * *" (Sec. 7, Art. 1175, R.C.S.), and "control and manage the finances" of the City and prescribe its "fiscal arrangements" (Sec. 10, Art. 1175, R.C.S.), was fully authorized to provide for the maintenance of its fire department by a levy, separate and apart from that of 75 cents for general and street purposes.

The phrase "general purposes" is not defined or explained in the charter. Evidently it was intended to include miscellaneous expenses that, at the time of levy, could not have been anticipated, or the amounts to be incurred estimated. 28 C. J. 609, discussing the meaning of the phrase "general fund", states that, "as applied to a city", it means "a miscellaneous sum for the payment of claims which will arise and for which it is impossible to remit the exact amount which will be required." In the case of Kelly v. Broadwell, 3 Neb.Unof. 617, 92 N.W. 643, 645, referring to a similar appropriation, the court said: " * * * It was proper for the city to provide a miscellaneous fund to be called a 'general fund' for the payment of claims which would arise, and for which it was impossible to estimate the exact amount. which would be required. * * *" So, I submit, in view of the several provisions of the statute and charter of the City, that it was not intended that, taxes levied and collected for "general purposes" should be expended for the support of any purpose for which a separate levy was either expressly, or by necessary implication, authorized.

Aside from the annual levy of .75 for general and street purposes, the charter of the City makes it the duty of its Commission to levy .05 for the support and maintenance of a library; .35 for the support and maintenance of schools, plus such additional amount (within the prescribed limitation) as may be authorized by a majority vote of the qualified property tax-paying voters; also a sufficient amount to pay the interest and provide a sinking fund sufficient in

amount to discharge, at maturity, all bonds legally issued. Although for the purposes just mentioned, the charter contains express provisions authorizing and requiring levies, yet, I think, for the reasons heretofore stated, that, by necessary implication, the charter just as positively authorized and imperatively required the City Commission to make annual levies (not exceeding the maximum) for the support and maintenance of its fire department.

For the reasons stated, I am of opinion that, the motion for rehearing by the City of Terrell should be granted, that the judgment of this Court, heretofore reforming and affirming the judgment below, should be set aside, and that, judgment should now be rendered, affirming the judgment below in its entirety.