## MOODY–SEAGRAVES CO. v. CITY OF GALVESTON.

### No. 9591.

Court of Civil Appeals of Texas. Galveston.

Nov. 13, 1931.

Rehearing Denied Dec. 10, 1931.

for taxes due the appellee for the years 1927 and 1928 upon property in the city of Galveston owned by appellant, and for penalties, interest, and costs.

Appellant, in the court below, answered appellee's suit by general demurrer and special exceptions to the petition, and by general denial, and specially pleaded "that it did not render the property described in the petition for taxation for either of the years in question, and that it was not the owner at the time the taxes in question were levied and assessed." Defendant then averred that the property was owned by Galvez Mills, a corporation, during the years 1927 and 1928, but was in the possession of a receiver appointed by the district court of Galveston county from October 7, 1927, to May 10, 1928, and further averred that the property was not rendered and assessed in a lawful manner, in that the valuations placed on the property were grossly excessive of its fair market value "and that said valuations were not arrived at or placed on said property in a lawful manner by anyone authorized by law to place such valuations thereon."

The trial in the court below without a jury resulted in a judgment in favor of appellee for $17,945.79 taxes, interest, penalties, and costs, with interest thereon from date of judgment at the rate of 6 per cent. per annum. For $281.02 of this judgment a lien was established and foreclosed on the southeast quarter of outlet No. 82 in the city of Galveston, except that portion of one-quarter of the outlet owned and occupied as a railroad right of way. A lien for $63.26 was established and foreclosed on the Southwest quarter of outlot No. 82, and one for $5,425.21 was established and foreclosed on the improvements and the portions of both of these quarter lots on which they were situated, and a lien for $11,276.30 was established and foreclosed on the machinery in the buildings on the premises. The judgment was against the appellant, but directed that no execution should issue against it in event the properties sold for less than the amount of the judgment.

The first ground for reversal urged by appellant is presented by the following proposition:

"Where it appears from the petition, in a suit to establish and foreclose special tax liens on real estate, that there are two separate tracts on which improvements or fixtures are located and the petition alleges the aggregate value of the improvements on both tracts and the aggregate amount of taxes due on such improvements, it is error to overrule a special exception seeking to require allegations to be made showing separately the value that was placed on each tract including the improvements thereon, or the amount of taxes provisions thereon, or the amount of taxes

McDonald & Wayman and H. E. Kleinecke, Jr., all of Galveston, for appellant.

Bryan F. Williams and P. A. Drouilhet, both of Galveston, for appellee.

PLEASANTS, C. J.

This appeal is from a judgment of the court below in favor of appellee against appellant

claimed to be due on the improvements or fixtures on each tract separately."

The petition described the property upon which the taxes sued for were claimed to be due, as situated in the city of Galveston "and described on the map of said city in common use, to wit:

"All of the Southeast Quarter of Outlot 82 except railroad right of way and all of the Southeast Quarter of the Southwest Quarter of Outlot 82, and improvements on said properties."

Following this allegation are averments showing the tax rate levied for each of the years and the purposes for which made, after which it is set forth that the following tabulated statement shows the value of the property for each of the years in question, and the amount of taxes due thereon "severally and respectively," to wit:

"On said SE ¼ of Outlot 82, except Right of Way of railroad

| Year | Value | City Tax | School Tax |
|---|---|---|---|
| 1927 | 3000.00 | 59.70 | 12.00 |
| 1928 | 7000.00 | 142.10 | 28.00 |

"On said SE ¼ of SW ¼ of Outlot 82

| Year | Value | City Tax | School Tax |
|---|---|---|---|
| 1927 | 750.00 | 14.93 | 3.00 |
| 1928 | 1500.00 | 30.45 | 6.00 |

"On said Improvements on said real property

| Year | Value | City Tax | School Tax |
|---|---|---|---|
| 1927 | 96,000.00 | 1910.40 | 384.00 |
| 1928 | 96,000.00 | 1948.80 | 384.00" |

We do not think the court erred in failing to sustain this exception to the petition. The description of the land indicates that the two tracts were contiguous. When the outlot was located and designated its designation shows that it was outside of the subdivided blocks and lots of that portion of the city through which streets and alleys were laid out, and there is nothing on the face of the petition to raise any presumption that the southeast and southwest quarters of the outlot were in any way separated from each other. Neither do these allegations of the petition indicate that the improvements valued and assessed on the properties were separate improvements, but, to the contrary, the fact that the two tracts of land were separately valued and assessed while the improvements were valued as a whole indicate that such improvements were parts of one building establishment covering portions of both tracts.

It may be conceded that the pleading would have been more perfect had it expressly alleged the contiguity if the lots and the oneness of the improvements, but in our opinion it sufficiently put the defendants upon notice what the plaintiff expected to prove in support of its claim, and defendants could not have been injured by the refusal of the court to require plaintiff to plead its case more explicitly.

■ Appellant next assails the judgment fixing the lien for taxes due on the improvements on the two tracts of land in the aggregate sum of $5,425.21, on the ground that the improvements on each of said tracts were not separately valued and assessed, and therefore such judgment "is void and will be set aside."

This proposition presents the question of whether there is any evidence to sustain a finding by the trial court that the improvements on the two tracts consisted of one business building covering portions of the two tracts.

The assessor for the city of Galveston testified:

"The portion of Galveston where this mill is located is, in real estate what is called outlot.

"The Galvez Cotton Mills, over the telephone, by their request, rendered this property in 1927, I called them up and told them they had not rendered their property and we would like to get them on the rendered roll. * * * I called up and asked to speak with someone there who had to do with the rendering of taxes and I told him who I was and told him they had not made their assessment and I would like to get it. I told him we had the same figures as the county. He said to just go ahead and assess the same as the county. That inventory shows it by request for those amounts. I don't know to whom I talked, whether it was Mr. Maupin or Mr. Reed, or who. The rendition was already made out. I think I made it out. This is the original here. I made it up myself." (Defendant introduced in evidence, as Defendant's Exhibit No. 1, page 205 of Rendition Book for 1927.)

"The material portion of said Exhibit is as follows:

| Lot | Block | Out-lots | Ground | Improvements |
|---|---|---|---|---|
| All except R. of W. | SE | 82 | $3000.00 ⎱ | $96,000.00 |
| SE ¼ | SW | 82 | 750.00 ⎰ | |

"No one rendered the property for 1928."

To the question, "When no property owner appears and no attempt is made to render any rendition, do you then further consider the previous valuations that you placed on the property, that unrendered property, or does it automatically go into the assessment roll at that value?" the witness answered: "It goes into the unrendered assessment roll at the value we had previously fixed."

■ The reasonable inferences from this testimony are: That the property against which the taxes were assessed constituted the plant of the Galvez Cotton Mills, and the improvements thereon consisted of the cotton mill building and necessary annexes thereto, and these improvements covered portions of both

tracts of land; that valuations and assessments of the several items embraced in the inventory for 1927 were made with the approval or acquiescence of the owner, the Galvez Cotton Mills, and that the same valuation and assessment was made by the assessor for 1928, without objection on the part of the cotton mills, or any rendition of the property by it. In the absence of any evidence by the appellant contradicting or tending to contradict these inferences, the trial court was authorized to find the facts in accordance therewith, and in support of the judgment we must assume the court so found.

While the general rule requiring the separate valuation and assessment of separate pieces of property is well settled, as declared by the Supreme Court in the case of Richey v. Moor, 112 Tex. 493, 249 S. W. 172, and followed by this court in Davis v. West (Tex. Civ. App.) 5 S.W.(2d) 870, it is equally well settled that where separate pieces of property are occupied and used by the owner for one and the same purpose, and their separate identities and values become merged and consolidated by such use, no separate valuation and assessment is required. Guerguin v. City of San Antonio, 19 Tex. Civ. App. 98, 50 S. W. 140; Cooper Grocery Company v. City of Waco, 30 Tex. Civ. App. 623, 71 S. W. 619.

Sections 56 and 60 of the Galveston City Charter provide that:

"All taxes shall be a lien on all the property upon which they are assessed, both real and personal, until they shall have been paid, and may be collected by suit and foreclosure of such lien in any court of competent jurisdiction, and in addition thereto the Board may adopt and enforce any remedy provided by law for the collection of state and county taxes.

"All taxes due by property owners on any and all property for the year 1884, and up to and including the year 1899 and for all years to come until otherwise provided by charter, as appear upon the tax rolls of said city, may be collected by suit from delinquents and foreclosure of the lien thereon be had in any court having jurisdiction of the same, and any person who shall purchase property encumbered with a lien for taxes shall be deemed, as to such taxes, a delinquent taxpayer, and such purchaser takes the property charged with the lien and he cannot interpose any defense which his vendor might not have interposed had he continued to be the owner thereof. And no delinquent taxpayer shall have the right to plead in any court, or in any manner rely upon any statute of limitations by way of defense against the payment of any taxes or assessments due from him or her to the City of Galveston."

Neither of these charter provisions are, in our opinion, obnoxious to any provision of our state constitution, nor in conflict with any statute of this state.

We cannot agree with appellant's contention, that because of the provisions of the Constitution and the general statutes authorizing the seizure and sale by the collector of personal property for the taxes due thereon the Legislature had no power to enact the provisions of the Galveston City Charter giving the city the right to sue and foreclose its lien for such taxes. None of the cases cited by appellant sustain its contention on this subject. In the case of Brown v. Fidelity Investment Company (Tex. Com. App.) 280 S. W. 567, 568, there was a direct conflict between the general law and the charter provision in question, while there is no such conflict in this case. In so far as section 56, article 3, of the Constitution affects this question, our Supreme Court holds as to the inhibition of that provision against the passage by the Legislature of special or local laws, where a general law can be made applicable, that, "The inhibition of section 56 of article 3 was not against the passage of local or special laws which might conflict with some general law which the Legislature could pass and could make applicable; but the prohibition is clearly against an act which the Legislature does pass and which is applicable. As Judge Henry says, much latitude was intended to be given the Legislature in chartering cities, and as long as cities are not regulated by general statute, the Legislature could give to any city any right which it could give to all cities." Brown v. Fidelity Inv. Co., supra; City of Dallas v. Western Electric Co., 83 Tex. 243, 18 S. W. 552.

The inventory and assessment having been made against a manufacturing mill, the item of machinery listed in the inventory and assessment sufficiently identifies it as the machinery of and in the mill and a part thereof, and the fact that the owner and the city assessor in making the inventory and assessment fills out the inventory and assessment rolls showing the separate valuation and assessment made of the land, the building and the machinery does not affect the sufficiency of the description of the machinery, and the trial court correctly found that the machinery valued and assessed "was that located and situated in the improvements known and assessed as the Galvez Cotton Mills," and the appellant as the purchaser of these mills was charged with notice that the taxes upon the machinery therein were unpaid.

The deed under which appellant acquired title to the property expressly conveys the machinery in the building, and the evidence sufficiently identifies the machinery acquired under this deed and that upon which the unpaid tax assessment was made by the city.

Upon this record there is no merit in appellant's contention that the assessment of

the machinery was void because of insufficiency of description.

█ We also conclude that there was no error in the judgment of the trial court in adjudging that the total amount of taxes, penalties, and interest found to be due on the property should bear interest from the date of the judgment at the rate prescribed by the statute.

The remaining objections to the judgment presented in appellant's brief have been duly considered and being, in our opinion, wholly without merit, are overruled without discussion.

Appellee's cross-assignment complaining of the judgment of the trial court in not fixing a lien upon the lands involved for the full amount of the judgment rendered is not sustained for the reason that it is doubtful if the petition invokes and prays for such judgment.

We think the judgment of the court below should be affirmed, and it is so ordered.

Affirmed.