## W. T. WAGGONER ESTATE v. ELECTRA INDEPENDENT SCHOOL DIST.

### No. 14300.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 28, 1941.

Rehearing Denied Jan. 9, 1942.

R. B. Anderson, of Vernon, and Kilgore & Rogers, of Wichita Falls, for appellant.

T. R. Boone, of Wichita Falls, C. P. Engelking, of Electra, and Kearby Peery, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This suit is brought by Electra Independent School District against the W. T. Waggoner Estate to recover taxes, with penalties and interest, for the years 1933 to 1938, inclusive. Trial before a jury resulted in a judgment in favor of plaintiff for all amounts sued for, from which defendant appeals.

During the years involved, said Estate owned twenty-five or more tracts of land within the school district, several of which were producing oil. Each year the Estate rendered its properties for taxation, and each year tendered payment of the taxes based upon its renditions. The renditions so made listed each of the several tracts the Estate owned, with the value of each, including the value of the minerals under each tract, save and except that for the years 1936, 1937 and 1938, the royalty interest under certain tracts which were under lease to the Texas Company was rendered as a separate item, and was not included in the valuations of the several tracts of land.

During each of the years in question, the taxing authorities of the school district followed substantially the same procedure with respect to the renditions made by the Estate. The tax assessor would furnish to the board of equalization his estimate of the aggregate amount of royalty received daily by the Estate from all of its lands within the district. The board of equalization would reduce the value of each of the tracts to an amount it considered a proper valuation of the surface, as distinguished from the minerals, and would then add to the rendition what might be termed a blanket assessment against all the royalty under all of the lands. The valuation of the royalty would be arrived at by multiplying the daily royalty production by a given figure. The royalty assessment so made by the board of equalization for the various years was as follows: 1933, 143.99 barrels at $900 per barrel, $129,591; 1934, 164.79 barrels at $850 per barrel, $140,071.50; 1935, 144.53 barrels at $1,000 per barrel, $144,530; etc., for the remaining years. Assessments were made against the 7/8ths working interest in some of the tracts in a similar manner.

The totals of the tax assessments thus arrived at by the board of equalization were greatly in excess of the renditions made by the Estate.

Following the action by the board of equalization, there was entered each year upon the tax rolls an item of 1/8th royalty, of the aggregate value so ascertained, and, for some of the years, an item of 7/8ths working interest. Briefly, the taxing authorities undertook to make a blanket assessment against all of the royalty owned by the Estate, and against all the 7/8ths working interest, as distinguished from an assessment against the mineral interests in each separate tract.

The petition sought to foreclose a lien upon all of the land for the taxes assessed against all of the mineral interests, and the judgment rendered likewise adjudged a lien against all of the tracts for the taxes assessed against all of the mineral interests.

The record shows without dispute that the board of equalization arrived at its valuations of the mineral interests in all other lands in the district in the same manner. It would decide upon a given figure, that is, $850, or $900, or $1,000, for that particular year, and would in each instance multiply this figure by the estimate of daily production furnished it by the tax assessor, to arrive at its valuation for royalty, without regard to any other factor, such as age of the wells, whether sand or lime production, probable life of the wells, etc. Nor did the board undertake to ascertain the amount being received from each tract, where royalty was owned under more than one tract, or from portions of a tract covered by several leases.

In no way can it be determined, from the tax records of the district, what amount of taxes has been assessed against any particular tract of land.

Although plaintiff in its brief undertakes to demonstrate that the tax records are

such that the Estate, with its knowledge of its own affairs, could figure the amount of taxes it would have to pay against each tract, yet in its petition the district alleges that it was "unable to accurately allocate respective mineral valuations to each of the respective tracts of land other than as hereto described, but did take the total productivity, or the entire minerals calculated in barrels, which were received by the defendant, and fixed a value thereon for each of the years, both as to the royalty received by the defendant and the working interest received by the defendant, all as more fully set forth in detail in the tabulation, as follows:" The tabulation following shows the amount of tax assessed against the surface, as distinguished from the minerals, and then shows, for each year, the amount of tax against the total royalty interests in all of the lands, and the amount of tax against the total ⅞ths working interest. The royalty, as well as the working interest, is described only as a certain number of barrels.

In following the above described procedure, the board of equalization each year attached to the rendition a list of names of purported lessees, without identifying the land covered by the leases owned by such lessees. The petition, as well as the judgment, also contains a long list of names of lease owners, without identifying the particular tracts covered by their respective leases.

In answer to the only special issues submitted to it, the jury found: (1) At the time defendant rendered the properties in controversy, it deliberately and purposely failed to show the amount of oil that it was receiving from each and every tract of land. (2) Such conduct on the part of the defendant did not result in the assessments being made as they were made. (3) Defendant deliberately and purposely withheld from the board information concerning the true value of the royalty interest in controversy. (4) Such conduct did not result in the assessments being made as they were made. (5) Royalty from some Estate properties in the district was worth less on a per barrel basis than oil royalties from other properties in such district. (6) The working interest from some Estate properties in the district was worth less on a per barrel basis than the working interest from other oil properties in the district.

The trial court rendered judgment for $18,099.62, being the full amount sued for. It then decreed a lien in favor of plaintiff upon each of the several tracts of land for what is obviously the amount of taxes assessed against the surface. It then decreed as follows: "It is further ordered, adjudged and decreed by the court that the plaintiff is entitled to a lien to secure the taxes on the following described lands and premises situated in the Electra Independent School District during the years of 1933 to 1938, inclusive, covered by the leasehold instruments then held during that period by the following named Lessees, who were then operating portions of said above described sections or surveys, the exact description of the area which said leases covered being more clearly shown by the leases or assignments to the respective lessees hereinafter named, to-wit:"

Following the quoted portion of the judgment is a list of names of 32 persons and firms.

Following this list of names the judgment contains the following recitation:

"* * * for the year 1933 in
the sum of ............... $1,859.63
for the year 1934 in the sum of.. $1,925.95
for the year 1935 in the sum of.. $1,900.56
for the year 1936 in the sum of.. $2,422.77
for the year 1937 in the sum of.. $2,520.61
for the year 1938 in the sum of.. $2,361.36
making a Total lien against said
  properties covered by the respective named lessees, in the
  sum of ...................$12,990.88

"All or said property covered by said Leases above described being situated in the Electra Independent School District of Electra, Texas, for each of the years hereinabove enumerated."

The remainder of the judgment reads as follows:

"It is further ordered, adjudged and decreed by the court that the plaintiff be entitled and decreed to have a lien upon the following described properties operated by the defendants for oil and gas production during the years of 1936 for the sum of $6.06; for the year of 1937 in the sum of $506.91; for the year 1938 in the sum of $705.39; and all of which properties here being operated by the defendants during those years of 1936, 1937 and 1938 covering portions of the above properties first described and all situated in the Electra Independent School District of Wichita County, Texas.

"It is further ordered, adjudged and decreed by the court that the liens herein

fixed against said properties be, and they are, hereby, foreclosed and the Clerk of this court is directed to issue an order of sale against said properties, said lien being fixed as of this date for the amount of monies heretofore set forth being the amount as of July 1, 1940, together with 6% interest thereon from date, and it is so ordered.

"It is further ordered, adjudged and decreed by the court that the defendant pay all costs in this behalf incurred, for which let execution issue.

"Dated and filed April 15, 1941."

We have considered it necessary to quote rather fully from the judgment in order to present more clearly the problems involved.

■ Such mineral interests are taxable as realty. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741, and cases therein cited.

■ The method of valuation followed by the board of equalization was clearly wrong. For reasons and authorities condemning such a method, we refer to Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Richardson v. State, 53 S.W. 2d 508, the holding of the Court of Civil Appeals in the latter case being affirmed by the Supreme Court in State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076; and Simkins v. City of Corsicana, Tex.Civ. App., 86 S.W.2d 792. Appellee contends that the Estate has shown no injury as a result of this method of valuation, in that there is no finding of the jury that the royalty owned by the Estate was less valuable, on the average, than the other royalty in the district. For reasons which will be shown, it is not necessary for us to pass upon this contention.

■ In its petition the school district seems to allege that the Estate did not render its mineral interests, and that the board of equalization added the mineral interests to the rendition. If it did do this, it had no legal right to do so. The board of equalization may, under proper procedure, change the valuations, but it may not add, to the rendition, properties not included in the rendition. Such unrendered properties could only be placed on the unrendered rolls by the assessor. Crocker v. Santo Consol. Independent School District, Tex.Civ.App., 116 S.W.2d 750, and cases therein cited.

■ Assessments, of taxes against real estate, and interests therein, must be suf-ficiently definite to identify the property intended to be taxed. Richey v. Moor, 112 Tex. 493, 249 S.W. 172; State v. Farmer, 94 Tex. 232, 59 S.W. 541; Town of Pleasanton v. Vance, Tex.Civ.App., 4 S.W.2d 247; Garza v. City of San Antonio, Tex. Com.App., 231 S.W. 697.

The vice in the method followed by the district especially becomes apparent when attention is directed to the petition and the judgment in the present suit.

■ The lien for taxes attaches only to each separate tract or parcel of land for the taxes assessed against it. Richey v. Moor, 112 Tex. 493, 249 S.W. 172. The district here undertakes to impress upon all of the lands of the Estate within the district a lien for the taxes owing upon the minerals under each and every tract, though some of the tracts do not even produce oil. Neither from the tax records of the district, nor from the allegations of its petition, nor from the judgment, could there be determined the amount of taxes assessed against any tract. Had the owner desired to exercise his right of paying the taxes against any particular tract, the taxing authorities of the district could not have ascertained the amount owing against the tract. The owner could not, under the judgment rendered, relieve the tax lien, by paying the amount adjudged to be a lien, upon any particular tract. Nor can the sheriff, under order of sale, determine the amount of the judgment lien against any of the several tracts. Nor, so far as we can see, could the district, upon another trial, determine from its tax records the amount of taxes which it should seek to establish against each of the several tracts. In Richey v. Moor, supra, it is said: "Our entire scheme of taxation, from the initial proceeding of rendition to that of final payment, or of sale under seizure or by court process, provides for keeping separate the description of each tract of land, with the amount of taxes levied against it, from other taxes assessed against the taxpayer, or taxes levied against other tracts of land."

In the same case the Supreme Court also says: "Our whole taxation system is based upon the idea that the amount assessed against each tract of land is, in effect, a separate tax."

■ The school district seeks to bring the case within the rule announced in such cases as City of Edinburg v. Magee, Tex. Civ.App., 97 S.W.2d 983, and the cases

cited in that opinion, to the effect that where two or more tracts or parcels are occupied and used together by the owner for a single purpose, such as a homestead, or the site of a single building, they may be valued and assessed as a single piece of property. It alleges in its petition, and argues before us, that the Estate owned and operated these properties as a single unit. It seems to us that the very fact that there are thirty-two different lessees, if the list of lessees in the judgment is correct, is enough to demonstrate conclusively that the mineral interests in these tracts are not operated as a single unit. We may rely upon our general information about such matters to know that each separate lease would, to some extent at least, constitute a different operation insofar as the royalty owner was concerned.

We do not consider that the difficulty of ascertaining the amount of production from each of the tracts would of itself render inapplicable the rules laid down in Richey v. Moor, supra. It should not be unduly difficult for the taxing authorities to ascertain the number of wells upon each tract, and it is commonly known that records of production are kept by certain departments of the State government. And, as for that matter, the amount of production from a well for a certain year would not be the only criterion of value. A board of equalization ought not to experience any difficulty in obtaining estimates of value from oil men familiar with the locality in question. Viewing the matter practically, the board's trouble was not in obtaining fair estimates of value, but in endeavoring to follow out its erroneous theory of valuing all royalty upon the sole basis of a certain number of dollars per barrel of daily production.

■■ The school district also contends that the Estate is estopped to complain of the assessment in bulk, because the Estate rendered, for 1936, 1937 and 1938 taxes, the royalty interest in the lands covered by the Texas Company "A" lease as a single item, separate from the tracts of land themselves. It is only reasonable to hold that a taxpayer should not be allowed to complain of an assessment which follows the plan of his rendition. Dallas Title & Trust Co. v. City of Oak Cliff, 8 Tex.Civ. App. 217, 27 S.W. 1036; French Independent School District v. Howth, 134 Tex. 211, 134 S.W.2d 1036. But it is elemental that there can be no estoppel as to the proceedings had before the Estate began making the separate renditions of the royalty under the Texas Company "A" lease. And as to the years in which such renditions were made, the board did not merely raise or lower the value of this item of royalty, as so rendered, but discarded the rendition altogether, and included it with all the other royalty belonging to the estate in a single bulk assessment. The matter therefore becomes immaterial.

■ The school district urges that the Estate should be precluded from making any attack upon the actions of the board of equalization because of what is termed the "iniquitous conduct" of the Estate, in withholding information concerning the amount of oil being received from the lands in question. The jury found that the conduct of the Estate, in withholding such information, did not result in the assessments being made as they were made. The jury could have made no other finding from the evidence, because it is undisputed that the board valued all royalty in the district upon the same basis, that is, at a certain number of dollars per barrel of daily production. This contention is without merit.

The judgment includes the taxes upon certain town lots, in the City of Electra. We do not find any ground for reversal of the judgment as to this item, except that the lots are not described in the judgment.

■ The judgment of the trial court is reversed, and the cause remanded with instructions to the trial court to render judgment for the taxes on the Electra town lots as the trial court heretofore rendered judgment, except that such lots shall be described; and as to the taxes on the remainder of the property in question judgment shall be rendered in favor of the plaintiff upon the basis of the tender made by defendant, provided such tender is not less than the rendition made for the respective years. For the taxes against the royalty under the lands covered by the Texas Company "A" lease, as rendered by defendant, plaintiff shall be adjudged a lien against the royalty interest in all of the lands covered by such lease. In the event the tender is less than the rendition, then judgment shall be for the taxes upon the rendition made by defendant. No judgment shall be rendered for penalties or interest. We dispose of the case in this manner upon authority of State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076.