ELECTRA INDEPENDENT SCHOOL DISTRICT v. W. T. WAGGONER ESTATE.

No. 7948. Decided January 27, 1943.
Rehearing overruled March 3, 1943.
(168 S. W., 2d Series, 645.)

484

T. R. Boone and Kearby Peery, both of Wichita Falls and C. P. Engleking, of Electra, for petitioners.

On the proposition that the methods of valuation were incorrect. 17 Tex. Jur. 48; Cooper Grocery Co. v. City of Waco, 71 S. W. 619; Eustis v. City of Henrietta, 90 Texas 468, 39 S. W. 567.

R. B. Anderson, of Vernon, and Kilgore & Rogers, of Wichita Falls, for respondents.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

The Electra Independent School District recovered a judgment against the Waggoner estate for $18,099.62, together with foreclosure of liens for taxes, penalties, interest and costs. The Court of Civil Appeals at Fort Worth reversed the judgment of the trial court and remanded the cause with instructions which amounted to a rendition of a judgment in favor of the Waggoner estate upon a tender of its taxes based on its rendition and valuations of property situated within the school district. 157 S. W. (2d) 721.

Waggoner estate rendered some 25 or more separate tracts or parcels of land and town lots, together with certain personal property, to the school district for tax purposes during the years 1933, 4, 5, 6, 7 and 8, inclusive. The tracts or parcels of land were briefly described in accordance with the statute by giving abstract and survey numbers, original grantees, number of acres and value. The town lots were consolidated in city blocks and the value placed on all lots in one block. Oil was being produced on many of these tracts and the estate owned a one-eighth royalty in such production and in some instances the estate owned a seven-eighths working interest in the oil production. In the rendition for the years 1933 and 1934 the

minerals were not excepted from the description of the property, neither was the value of the fee or minerals separated. The renditions of the Waggoner estate for the years 1935, 6, 7 and 8, inclusive, were made in practically the same manner as above described, except mineral interests were described as "royalty" and "working interest." The value of the "fee" was stated and the total of the fee value and presumptively the value of the mineral interest were estimated in one total.

The assessor and collector of the district, in connection with the Board of Equalization, attached to the rendition sheets, or noted on said rendition sheets, raises in the value of the surface or fee estate and in some lowered such values and noted the various average daily production of oil on the leases, in which the estate owned working interests and royalty, and placed the value upon the daily production as the fair market value of the royalty and working interest at so much per barrel. The same method was used by the Waggoner estate when the estate specifically described mineral interests in its rendition, except the estate used a smaller value per barrel than was used by the taxing authorities. The assessor and collector, in making up the tax roll, placed the various tracts or parcels of land the same as described in the renditions with the values of the fee or surface as raised or lowered by the Board of Equalization. The total amount of oil production in barrels at the average price per barrel was placed on the tax rolls in one sum. For example, the one-eighth royalty for 1933 was placed on the tax rolls at $129,590.00. This included all the royalty belonging to the estate in and under many of the tracts or parcels of land which were covered by a number of different oil and gas leases belonging to various and sundry lessees. Thus the taxes due the school district by the Waggoner estate, as shown by the assessments and the tax rolls for the years involved in this suit, do not appear on said assessment lists and tax rolls as the property was described in the renditions of the Waggoner estate. The taxes due the district by the Waggoner estate on lands which were producing oil are shown with respect to the surface estate as they were described by the Waggoner estate in the renditions but the mineral interests, both working interests and royalties, are aggregated in the one amount and so described on the assessment lists and the tax rolls of the school district.

■ Article 7146 of Vernon's Annotated Civil Statutes of Texas, 1925, provides: "Real property for the purposes of taxation,

shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in in any wise appertaining thereto, and all mines, *minerals, quarries* and *fossils* in and under the same."

Under the statute quoted it has been held that a conveyance of oil and gas in place in the ground is an interest in realty which is subject to taxation in the hands of the grantee. Texas Company v. Daugherty, 107 Texas 226, 176 S. W. 717; L. R. A. 1917 F 989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290, 29 A. L. R. 566. It has been held that minerals contained in land when severed from the land by a proper conveyance may be taxed separately from the land itself. State v. Downman, 134 S. W. 787 (writ refused), Downman v. State, 231 U. S. 353-7, 34 Sup. Ct. 62, 58 L. ed. 264. Royalty interests in oil and gas acquired under instruments conveying minerals in place are taxable as realty. Federal Royalty Co. v. State, 42 S. W. (2d) 670; Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741.

Article 7164 of Vernon's Annotated Civil Statutes of Texas, 1925, provides how real estate should be rendered for taxation. "(1) The name of the owner, abstract number, number of survey, the number of certificate, the nameof the original grantee, the number of acres, and the true and full value thereof. (2) The number of the lot and block and the true and full value thereof, together with the name of the town or city. (3) When the name of the original grantee, or abstract number, or number of certificate, or number of survey is unknown, say 'unknown' and give such description so that land or lot can be identified and the true and full value thereof can be determined."

■ It has been decided by this Court that the lien provided by Section 15 of Article 8 of the Constitution of Texas and declaratory statutes enacted pursuant thereto attaches only to each separate tract or parcel of land for the taxes assessed against it. Richey v. Moor, 112 Texas 493, 249 S. W. 172. It was recognized by this Court at an early date in the case of State v. Baker, 49 Texas 763, "that either lots or blocks in a town or city or originally distinct or separate surveys or grants in the country, if listed and assessed by the owner or with his

knowledge and consent and approbation as a single tract or parcel of land may not be subject to liens for the aggregate tax thus assessed or that two or more originally separate tracts or parcels of land either in town or country may not be so used and occupied by the owner as to warrant their assessment as a single tract." Reaffirming that doctrine this Court, in the case of State Mortgage Corporation v. Ludwig, 121 Texas 268, 48 S. W. (2d) 950, local citation 954, quotes the following from a statement made by the Dallas Court of Civil Appeals: "It would seem to be more in harmony with justice and sound reason that an assessment made in the manner requested or approved by the taxpayer would be a valid assessment. There might be reasons which would render it more convenient and to the interest of the taxpayer to have it so assessed than to have the assessment made against the various parcels. At any rate, the tax assessor assessed the property in the manner in which the taxpayer presented it to him for assessment, and we do not think that plaintiffs in error should now have the privilege of raising objection to the manner in which the taxes were assessed against the property." (Citing authorities).

Article 7204 of Vernon's Annotated Civil Statutes of 1925, in harmony with the above mentioned articles of our statute, require a brief description of realty in order to have a valid assessment for taxes. Ordinarily a description is sufficient when the property sought to be assessed may be identified from the description given. Slaughter v. City of Dallas, 101 Texas 315, 107 S. W. 48. Where a property owner has rendered his property for taxation and the assessment is made in accordance with the description furnished in the rendition, the taxpayer cannot complain of an insufficient description. McMahan v. The State, 147 S. W. 714. (Writ refused).

■ It is apparent from the facts stated in the present case that the purported assessments by the assessor and collector and the Board of Equalization of the taxes against the minerals under the land owned by the Waggoner estate is invalid for the lack of a sufficient description. We are unable to ascertain from the assessment lists and the tax rolls the tract or tracts of land of which the minerals assessed are a part; and since the owner of the realty duly rendered the property in separate tracts or parcels and not in "solido" the entire assessment of the surface or fee, as distinguished from the minerals, is also invalid.

The school district seeks to sustain the assessments made by the Board of Equalization upon the theory that the property was used and operated in such manner by the owners so as to render it impossible for the Board to make a proper valuation of the mineral interests under each particular section or tract of land. There is no showing in this record of any use made of the property involved which would bring the case within the exception to the general rule such as Moody-Seagraves v. City of Galveston, 43 S. W. (2d) 967; City of Edinburg v. Magee, 97 S. W. (2d) 983.

The assessor and collector and the Board of Equalization for the year 1933 attached a list to the rendition of the Waggoner estate showing the names of some 13 lessees, the average daily production of oil in barrels under each lease, and in some instances gave the abstract and survey numbers of the land from which the oil was produced. In the list it is stated that one of the leases covers 13 tracts without naming them. It is apparent that this description is wholly inadequate to identify the particular tract or tracts from which the oil was being produced. The property owner rendered the property in separate tracts and the taxing authorities should have assessed and valued the same in accordance with the description of the property owner's rendition unless the property was being used in such manner as to make it impossible to do so, which is not the case here.

It was contended by the Waggoner estate and the Court of Civil Appeals so held that the method of valuing the minerals used by the Board of Equalization was clearly wrong. We think the evidence in the record with respect to the method used by the Board of Equalization in the valuation of the mineral interests is susceptible of two different conclusions. If the Board considered the average daily production of oil in barrels at a fixed price per barrel as the sole test of the value to be placed upon the royalty or working interest being appraised, the method used is clearly wrong for the reason that such is an estimated value of the property based upon income. The average daily production of oil is a very important element to be considered in fixing the value of royalty or working interest but it is not the sole test. Likewise the rental income of property is a very important element to be considered in fixing its value but it is to be considered with many other elements. There is evidence in the record to the effect that the

Board of Equalization, in addition to the element of average daily production above stated, considered other elements such as number of wells on a piece of property, their age and depth, sand, flush production, etc., and the average daily production at the price per barrel fixed by the Board was the "cash market value" of the property. This issue was not submitted by the trial court. Neither was there a request for its submission. The failure of the taxing authorities to sufficiently identify the mineral interests attempted to be assessed is the real vice under the facts of this case. It is no answer to say that the Waggoner estate failed to give the necessary information to the Board of Equalization to enable the Board to exercise its duty for under statutory authority, Article 7212, the Board has power to call witnesses and require them to testify under oath as to "the character, quality and quantity of such property, as well as the value thereof."

■ It is argued that one of the leases which covers some 13 tracts of land belonging to the Waggoner estate is operated in connection with other lands not in the school district in such manner that the average daily production cannot with certainly be readily ascertained, hence the Board of Equalization cannot property value the royalty under the various tracts of land as described in the rendition of the Waggoner estate. It is no insuperable barrier to a proper valuation of said property that such information cannot be furnished. Many factors involved in the fixing of values of property must of necessity be based upon estimates of witnesses who are qualified to speak on the particular subject. A mere estimate of one of the many elements to be considered in fixing the value of property would not invalidate a value fixed by the Board of Equalization. It is the right of a property owner, who renders his property for taxation, where the tract or parcel is separately and properly described and valued, to have the same separately assessed and valued in accordance with the description contained in the rendition. There could be no objection raised by the taxpayer if the taxing authorities should fix the values of surface estate and the mineral interests separately and note such separate values on the rendition sheet and the tax rolls, for in such case the taxes due upon the entire interest owned by the taxpayer could be readily ascertained by a simple mathematical calculation. Thus the taxpayer and any interested parties might readily ascertain the amount of taxes and the estimate of the lien securing same from the tax records of the

taxing unit involved. Ordinarily the tax records of a taxing unit should be sufficient in themselves to furnish such information. For example in the rendition for the year 1935 one of the tracts was listed and described as follows: "Section No. 2, Abstract No. 5, original grantee Seale & Morris, number of acres 453, working interest 8.4 (average daily production in barrels), royalty 9.6 (average daily production in barrels), value of fee $2,265.00, total value $8,745.00." The Board valued the fee the same as it was valued in the estate's rendition. The working interest and the royalty interest were listed and assessed by the assessor and collector and the Board of Equalization with other mineral interests under other tracts of land belonging to the estate. Had the taxing unit valued and assessed the 7/8ths working interest and the 1/8th royalty interest and noted the same on the rendition sheet separately or with the fee entered the same on the tax rolls of the school district there could be no valid objection raised thereto.

These holdings apply where the authorities of the taxing unit attempted to separately assess and value the mineral interest not in accordance with the description of the surface estate as contained in the property owner's rendition. Obviously the rulings do not apply to the personal property, town lots and tracts or parcels of land where no attempt was made by the taxing authorities to assess and value the minerals and the surface estate in accordance with the description contained in the property owner's rendition.

■ We are of the opinion that the instructions given to the trial court, to wit: "to render judgment in favor of the school district for taxes upon the basis of the tender made by the Waggoner estate" is in error, although the Court of Civil Appeals followed an opinion of this Court in the case of State v. Richardson, 126 Texas 11, 84 S. W. (2d) 1076. The legislature has provided a procedure for the reassessment of property for taxation where property has been for any reason omitted from the tax rolls, or where assessments have been found to be invalid. Chapter 11, Title 122 of the Revised Civil Statutes of Texas, Article 7346 et seq. We quote Article 7346:

"Whenever any commissioners court shall discover through notice from the tax collector or otherwise that any real property has been omitted from the tax rolls for any year or years since 1884, or shall find that any previous assessments on any real property for the years mentioned are invalid, or have been

declared invalid for any reason by any district court in a suit to enforce the collection of taxes on said properties, they may, at any meeting of the court, order a list of such properties to be made in triplicate and fix a compensation therefor; the said list to show a complete description of such properties and for what years such properties were omitted from the tax rolls, or for what years the assessments are found to be invalid and should be canceled and reassessed, or to have been declared invalid and thereby canceled by any district court in a suit to enforce the collection of taxes. No reassessment of any property shall be held against any innocent purchaser of the same if the tax records of any county fail to show any assessment (for any year so reassessed) by which said property can be identified and that the taxes are unpaid. The above exception, with the same limitation, shall also apply as to all past judgments of district courts canceling invalid assessments. Acts 1905, p. 318."

These statutes are "made available for and when invoked shall be applied to the collection of delinquent taxes of cities and towns and independent school district insofar as such laws are applicable." Article 7343, R. C. S. 1925; Ceyanes v. Tobasco Consolidated Independent School District, 94 S. W. (2d) 537 (writ refused). The courts have no power to revalue and reassess property for taxation. The statutes above cited provide the method to be followed in such cases. It has been ruled that where a taxpayer has been discriminated against by the assessment of his property at its full value and the property of all others has been assessed at a value of 66 2/3 per cent of its full value, a court of equity for the purposes of adjusting the rights of the parties will reduce the assessment to the same proportion of value as was placed upon all other property assessed, thereby through a mathematical calculation remove the discrimination prohibited by the constitution. Lively et al v. Missouri K. & T. RR. Co. of Texas, 102 Texas, 545, 120 S. W. 852. The reassessment of property for taxation involves the discretion of the assessor and collector and the Board of Equalization of the particular taxing unit involved. The jurisdiction in this respect is exclusive. State v. Chicago, Rock Island R. R. Co. (Com. App.), 263 S. W. 249.

The important question for decision in the Richardson case was whether the court in a suit for taxes had the authority to revalue and reassess the property, where the assessments were found to be invalid, and award judgment for taxes based

upon such revaluation and reassessment. This question was properly determined in the negative and is in accord with our view above expressed. The only authorities cited for the rule that the taxpayer's original rendition prevails as a basis upon which taxes are to be paid, in the event the action of the Board of Equalization is set aside, are suits to enjoin the collection of illegal taxes. Brundett v. Lucas, 194 S. W. 613; Rowland v. City of Tyler, (Com. App.) 5 S. W. (2d) 756; Ramey v. City of Tyler, 45 S. W. (2d) 359. The Richardson case, like the present, was a suit for taxes and not a suit for an injunction to restrain the collection of illegal taxes. Hence the rule was improperly applied in the Richardson case. Whether such a rule is properly applied in an injunction suit we need not now determine. Many of the assessments attempted to be made in this case are invalid. In order for the school district to be entitled to collect taxes there must be a valid assessment. The statutes provide the procedure to be employed. If the value fixed by the property owner in his rendition is to prevail as a basis upon which taxes are to be paid then there would be no necessity for reassessment as provided by the statutes and the Board of Equalization would be deprived of its statutory duty of "equalizing taxes." In the present case the Board of Equalization for each of the six years involved raised the valuations of the Waggoner estate more than $100,000.00 per year. The tax rate for each year of the years was fixed at $1.00 upon the $100.00 valuaton, thus there is a difference of more than $1,000.00 in taxes for each of the years involved upon the basis of the valuations made by the respective parties. Whether the reassessment of the property will result in the same valuation is not for the courts to decide. That question must be decided by those authorized by law.

These considerations are sufficient to show that the instructions to the trial court contained in the opinion of this Court in the Richardson case were erroneous and should be overruled. It is equally clear that the same instructions should not be given in this case.

The Waggoner estate made a tender of taxes to the school district for each of the years involved which were computed upon the valuations contained in its renditions. No tender was made for the taxes assessed against each tract or parcel of land, personal property or town lots. The tender as made by the Waggoner estate was ineffectual to avoid the payment of pen-

alties and interest due upon taxes which the trial court may find to have been legally assessed by the authorities of the school district.

Accordingly we must affirm the judgment of the Court of Civil Appeals which reversed the judgment in favor of the school district and remanded the cause to the trial court for another trial. The trial court will determine the validity of the assessments made by the authorities of the school district in accordance with this opinion and where found to be valid render judgment in favor of the school district for the taxes, penalties, interest and costs and foreclosure of tax liens against property (describing it).

The trial court will deny any recovery for taxes, penalties and interest where the assessments are found to be invalid. Such judgment will be without prejudice to the rights of the school district and the Waggoner estate to proceed under authority of Article 7346 et seq.

No judgment for costs may be taxed against the school district. Articles 7343 and 7297 Revised Civil Statutes of Texas, 1925. Duclos v. Harris County, 298 S. W. 417; Grant v. Ellis, 50 S. W. (2d) 1093.

All costs incurred in the courts below and in this Court by the Waggoner estate are adjudged against it. Article 2051-2052, Revised Civil Statutes of Texas, 1925.

Opinion adopted by the Supreme Court January 27, 1943.

Rehearing overruled March 3, 1943.