Mrs. F. Clifford GREEN, Tax Assessor-
Collector, et al., Appellants,

v.

Gaines BALDWIN, Executor of the Estate of
Mrs. Genevieve Abney O'Banion,
Deceased, Appellee.

No. 7212.

Court of Civil Appeals of Texas.

Texarkana.

April 26, 1960.

Rehearing Denied May 24, 1960.

Lane Brothers, Walter E. Lane, Marshall, for appellants.

Abney, Abney & Baldwin, Marshall, for appellee.

CHADICK, Chief Justice.

This is an action for extraordinary relief by mandamus and injunction and to cancel an illegal tax rendition and quiet title. The judgment of the trial court granting the taxpayer such relief is affirmed.

Gaines Baldwin, Independent Executor of the Estate of Mrs. Genevieve Abney O'Banion, Deceased, as plaintiff instituted this suit against the City of Waskom, Texas and the tax assessor and collector of the city in the district court of Harrison County. The city and its tax official answered. Trial before the court resulted in a judgment from which the city and tax officials have perfected their appeal.

The parties in the trial court agreed the allegations of fact in the original petition were correct and that judgment might be entered thereon as upon an agreed statement of the facts of the case.

The nature of the parties' pleadings so far as it may be necessary to be noticed will be made in the discussion of the four points of error briefed. Discussion can be followed best by setting out appellants points of error. They are:

"I

"The error of the Court in ordering issuance of a Writ of Mandamus requiring re-assessment of undivided interest of Appellee when there was no pleading and/or proof that the mineral estate of Appellee was severed from the suit.

"II

"The error of the Court in ordering issuance of Writ of Mandamus where there was no pleading and/or proof that the assessment appearing on the 1958 tax roll of the City of Waskom in the name of 'Bert Fields et als' was illegal or void.

"III

"The error of the Court in ordering issuance of Writ of Mandamus commanding Appellant to accept the tender of $1.54, made by Appellee and issue to Appellee an official tax receipt showing that the ad valorem taxes for the year 1958 on said royalty interest have been paid, for the reason that such tender constituted only a tender of part payment of the total tax due under the assessment in the name of 'Bert Fields et als', and for the reason that Appellee has failed to allege or prove proper tender of the total amount due under the assessment in the name of 'Bert Fields et als'.

"IV

"The error of the Court in ordering issuance of Writ of Mandamus where there was no pleading and/or proof that the manner and mode of assessment of Appellee's property created any greater tax burden upon him than was authorized by law."

It is to be seen that error is asserted only in granting mandamus so mention of other relief granted by the trial court judgment is only incidental.

■ The real question at issue between the parties is whether or not the owner of a royalty interest may separately render and pay taxes upon it. This Court is of the opinion that the owner may do so. This conclusion will be developed in the consideration of the principal questions raised by the points of error. These questions

are, in order of presentation, an absence of pleading or proof that: (1) the O'Banion estate's royalty interest is severed from the mineral estate of the gas production unit; (2) the assessment of 1958 taxes on the O'Banion royalty interest was illegal or void; (3) tender was made of all taxes due under 1958 assessment to Bert Fields, et al.; (4) assessment of the O'Banion estate's royalty interest in the name of Bert Fields, et al. created any greater tax burden on the estate than the law authorized.

The appellants' argument in support of their view that O'Banion's royalty interest has not been severed from the mineral estate embraced in the Bert Fields-Genevieve O'Banion gas unit is not tenable. This argument directly contravenes the agreement that the allegations of fact in the petition are correct. It is alleged in the petition that the O'Banion estate is the owner of royalty interest totaling .001458 of the whole production of the unit. Aside from the agreement the parties made as to the facts of the case the appellants' theory supporting the contention seems to be that the O'Banion estate's fractional royalty interest can only be treated as a separate tract of land for tax purposes by following the procedures authorized in Art. 7345b, Vernon's Ann.Civ.St. The article has no application under this record, its provisions deal with delinquent tax suits. The article allows an owner of an undivided interest in land to have the land partitioned in a delinquent tax suit and his share set apart to him and the taxes on the whole apportioned so that the share set apart shall bear its proportionate part of the taxes, penalties, costs, etc., and upon payment of the apportioned tax, etc., the tax lien thereon be extinguished.

■ A second argument advanced on this question is that for ad valorem taxation purposes the gas production unit should be rendered, assessed, valued and paid as a single tract. In support of this latter postulation the appellants cite Henderson v. White, 69 Tex. 103, 5 S.W. 374; Richey v.

Moor, 112 Tex. 493, 249 S.W. 172; Moody-Seagraves Co. v. City of Galveston, Tex. Civ.App., 43 S.W.2d 967, and Electra Independent School Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645.

Running contrary to appellants' contention are decisions of the Supreme Court in Hager v. Stakes, 1927, 116 Tex. 453, 294 S.W. 835, and Bashara v. Saratoga Independent School Dist., 139 Tex. 532, 163 S.W.2d 631, op. adopt. In Hager v. Stakes a Court of Civil Appeals presented the Supreme Court with certified questions. One of the questions was this [116 Tex. 453, 294 S.W. 838]:

"If you answer question No. 3 in the affirmative, then against whom is such interest taxable (a) when the royalty interest is retained and owned by the original lessor and used and enjoyed by him in connection with his surface rights and as an incident of the ownership of the fee in the land; (b) when the original lessor has sold his royalty interest in his land and it is owned by parties other than himself and the lessee and his assigns—that is to say, when the surface rights and the fee in the land subject to the lease is owned by A, the interest in and under the lease is owned by the lessee, B, or his assigns, and the royalty interest is owned separately by a third person, C? In further explanation of this case, we state that it appears from appellants' petition that they own the fee and royalty in certain of the lands within the terms of subdivision (a) of this question, and that in the other lands they own only a royalty interest within the meaning of subdivision (b) of this question."

The Supreme Court answered in this language:

"Real estate is ordinarily taxed as a unit; yet, where there has been severances by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other

portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference, as outlined in State v. Downman (Tex. Civ.App.) 134 S.W. 795, and Downman v. Texas, 231 U.S. 356, 357, 34 S.Ct. 62, 58 L.Ed. 264."

The referenced decisions establish the rule that a royalty interest reserved or acquired may be rendered, assessed and taxed separately from the corpus of the estate from which it is derived. This rule applies in this case unless, as appellants urge, the formation of the Genevieve O'Banion-Bert Fields gas unit brings this case within the rule of Moody-Seagraves Co. v. City of Galveston, supra, which states [43 S.W.2d 970]:

"While the general rule requiring the separate valuation and assessment of separate pieces of property is well settled, as declared by the Supreme Court in the case of Richey v. Moor, 112 Tex. 493, 249 S.W. 172, and followed by this court in Davis v. West (Tex.Civ.App.) 5 S.W.2d 870, it is equally well settled that where separate pieces of property are occupied and used by the owner for one and the same purpose, and their separate identities and values become merged and consolidated by such use, no separate valuation and assessment is required. Guerguin v. City of San Antonio, 19 Tex.Civ.App. 98, 50 S.W. 140; Cooper Grocery Company v. City of Waco, 30 Tex.Civ.App. 623, 71 S.W. 619."

It is concluded that under the record of this case Moody-Seagraves Co. v. City of Galveston is not controlling. In Electra Independent School Dist. v. W. T. Waggoner Estate, supra, an effort was made by the board of equalization to consolidate the working interests and royalty interest under separate tracts belonging to the Waggoner estate and assess the several tracts

involved in "in solido" on the theory that the property was used and operated in such manner by the owner as to render it impossible to value the mineral interest of the several tracts separately. In disposing of this argument Commissioner Slatton said [140 Tex. 483, 168 S.W.2d 650]: "There is no showing in this record of any use made of the property involved which would bring the case within the exception to the general rule such as Moody-Seagraves Co. v. City of Galveston, Tex.Civ.App., 43 S.W. 2d 967; City of Edinburg v. Magee, Tex. Civ.App., 97 S.W.2d 983." It is to be observed that Moody-Seagraves Co. v. City of Galveston deals with a case where the owner of several lots occupied and used them for one and the same purpose by erecting buildings, etc., and their separate identities and values became merged and consolidated in such use. The relevant facts in this case are very similar to those in Electra Independent School Dist. v. W. T. Waggoner and on that authority the executor of the O'Banion estate had a legal right to render and have the estate's royalty interest separately assessed.

The second question also turns upon the agreed facts. The executor of the O'Banion estate timely rendered to the city tax assessor for taxation the estate's royalty interest under the production unit, stating its value. Without authority from the estate and without notice of a refusal to accept the estate's rendition the tax assessor consolidated the estate's royalty interest with the royalty interest of the numerous other royalty owners and with the working interest in the production unit and assessed the combined royalty and working interest to Bert Fields, et al. The agreement shows that the leasehold or working interest was initially assessed to Bert Fields and after review by the City's Board of Equalization that body determined and fixed its value. The Board of Equalization did not make any change in the O'Banion estate's initial and only rendition. The estate's representative was not notified to appear before the Board and made no appearance.

After the Board's action on the Bert Fields working interest the tax assessor increased the Bert Fields assessment by ⅓th, changed the style of the assessment to "Bert Fields, et al.," and set the result up as an assessment against the consolidated leasehold and royalty estate in that part of the gas unit lying in the city's corporate limits.

Article 1044 directs the manner in which a collector shall make up the assessment of property in the city. Articles 1045 and 1050 provide for the delivery of the assessor's assessment list to the city's board of equalization and prescribes certain of the board's duties upon receipt thereof. Article 1053 provides for notice to property owners when valuation on their property is raised. Article 1055 authorizes the board of equalization to make a final approval of the assessment rolls. It may also be noticed at this point that Article 1060a makes available all the provisions of Title 122 Revised Civil Statutes of Texas, 1925 (Articles 7041–7359) to municipal corporations organized as Waskom is under the General Laws of the state. However, the duties of the tax assessor, as outlined in the mentioned Articles, are not affected in any way material to this case.

The tax assessor's action in re-assessing the O'Banion estate's royalty interest after the estate's rendition was left unchanged by the board of equalization and consolidating it with mineral estate assessed to Bert Fields et al. has no support in law and constituted an illegal and void assessment. In Ramey v. City of Tyler, Tex.Civ.App., 45 S.W.2d 359, 362, n. w. h., it is said: "The board of equalization is the exclusive agency or tribunal made competent by the statute to modify or correct the valuation made to the tax assessor by the tax payer."

However, if there could be doubt, the assessment is illegal and void for the additional reason that the taxpayer was not notified of the increase in valuation and given opportunity to appear before the board of equalization and resist. Any assessment made without such notice and opportunity to appear before the board is void. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414; Republic Insurance Co. v. Highland Park Independent School Dist., Tex.Civ.App., 57 S.W.2d 627, e/d. See also 40 Tex.Juris., p. 136, Sec. 98.

The illegality of the assessment attempted, as shown in the paragraphs above, answers the third question. The O'Banion estate is under no duty to pay the total amount assessed in the name of Bert Fields, et al., and the estate's royalty interest cannot be charged with taxes assessed against owners of other mineral interest. Richey v. Moor, 112 Tex. 493, 249 S.W. 172, at page 175 says: "We are of the opinion that the tax against each separate tract or parcel of land, in so far as the right of payment is concerned, is to be regarded as a separate tax, and may be paid without at the same time paying other taxes." The Supreme Court used the quoted language in passing upon the right of an owner of several tracts to pay taxes due on one tract without paying taxes assessed against others. That result is even more compelling, logical and consistent under the facts of this case. The owner of an interest in real property may pay taxes due upon that interest without being required to pay taxes upon property not owned.

The conclusions reached respecting the owner's right to have a fractional mineral interest separately assessed and taxed and the conclusion that consolidating the O'Banion royalty interest with other mineral interest and making one assessment to Bert Fields, et al., was illegal answers the fourth question against the appellants. It seems to be appellants' contention that the estate should have brought all of the other mineral estate owners together and demanded that they contribute to pay the taxes assessed to Bert Fields, et al., and if they refused then the estate should have paid the tax, and thereafter obtained relief by proceeding against the other owners by

way of subrogation. Such theory is not sustained by any authority cited and to require the owner of the fractional royalty interest to proceed in such manner in order to discharge the tax obligation of the royalty interest inflicts a greater tax burden on the royalty owner than is authorized by law.

All of appellants' arguments and authorities have been carefully considered. What has been said in the preceding pages disposes of the principal contentions and appellants' four points of error are respectfully overruled. The judgment of the trial court is affirmed.